### SHAW et al. v. UNITED STATES.

No. 9932.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1945.

John L. Exby, of Memphis, Tenn., for appellants.

Thos. C. Farnsworth, of Memphis, Tenn. (William McClanahan, of Memphis, Tenn., and Fleming James, Jr., David London, and Arthur G. Silverman, all of Washington, D. C., on the brief), for appellee.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants, gas station attendants of the Billups Petroleum Corporation of Memphis, aggrieved at being fined and jailed for violations of gas rationing regulations, complain of their conviction and sentence and assign numerous errors in the proceedings below, some of seeming substance, and others narrowly technical.

Their main grievance is that they were entrapped by government agents. This necessitates consideration of the circumstances under which the alleged violations occurred. The OPA enforcement authorities in Memphis had had many complaints in respect to two of the stations operated by Billups. They were in respect to acceptance by station attendants of loose rationing coupons unaccompanied by an iden-

tifying folder, acceptance of counterfeited and stolen coupons and tolerance of an illicit neighborhood traffic in detached coupons. They knew that appellant Glass had been convicted of violations a year before and was still in the employ of the Petroleum Corporation. They decided to do something about it. Accordingly, they applied to the local ration board in Memphis, and there were issued to them for the purpose of securing evidence of violations, several serially numbered strip ration coupons without identifying folders. Some of the coupons were given Michigan license numbers, one an Arkansas number and another a Tennessee number so high as to be clearly fictitious. Separate parties of officers proceeded in their own cars to the stations at which the appellants were attendants. There they bought quantities of gasoline and tendered the loose coupons, the license numbers on which did not correspond to the license numbers of the cars. The coupons were accepted without question, without demand for the exhibition of the coupon folders and without comparison of coupon numbers with the license plates. Subsequently, the officers returned to the several stations, reclaimed the test coupons, and the gasoline was syphoned back into the station tanks. In the presence of the officers, the attendants were rebuked by the manager for Billups, who recalled to them that bulletin after bulletin had been issued by their employer impressing upon them the necessity for inspecting the endorsements on the coupons and checking them with the folders.

The appellants rested their case upon the testimony of the government agents. There is clearly here no basis for the defense of entrapment. As was said by the Supreme Court in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 212, 77 L.Ed. 413, 86 A.L.R. 249, "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. (Citing cases). The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." There is here no particle of evidence of any criminal design originating with the officials of the government, no evidence of inducement, nothing done to overcome shrinking or reluctance by the appellants. Compare Scriber v. United States, 6 Cir., 4 F.2d 97, with Cermak v. United States, 6 Cir., 4 F.2d 99. The officers furnished an opportunity for a violation of the regulations and nothing more. There was no enticement to violation, no instigation of it, and no subjection of the appellants to pressure of any kind. The coupons themselves proclaimed their irregularity, had there been any inclination on the part of the appellants to inspect them or compare their numbers with the plates. The court would have been fully justified in failing to submit the defense of entrapment to the jury on the ground that there was no evidence to support it. Voves v. United States, 7 Cir., 249 Fed. 191, is entirely inapposite.

The court did, however, permit the jury to consider the defense, and instructed them that if the officers were acting in bad faith and for the purpose of inducing and enticing the defendants to commit the offenses charged, and so cause them to violate the ration orders and regulations, the defendants were not guilty. It put the burden squarely upon the government to show that the arrests of the defendants were not the result of illegal entrapments. The appellants now complain that the court did not go far enough; that it should have directed a verdict for the defendants or, in any event, should have granted instructions to the effect that if the criminal intent originated in the minds of the officers or that the accused were lured into the commission of the offenses, the jury should acquit, and that if the genesis of the criminal act was with the officers and not the defendants, they should likewise acquit. There was no error in denying these instructions. The undisputed evidence is that the government agents were searching for evidence of law violation and not seeking to create it. There is nothing in the record contra. Moreover, we are unable to say that the court's instruction was not more favorable to the accused than what was required,

since in common parlance "inducing" and "enticing" may well include many legally permissible stratagems.

A contention that goes to the very base of the prosecution is that OPA has no power to limit or restrict materials obtainable by government agencies to the extent that they require such materials for export to and consumption or use in any foreign country. This is grounded on Supplementary Directive 1Q to the Office of Price Administration, and subsection C of § 903.22 of such Directive. The short answer to this contention is that the gasoline purchased by the agents was not for export to and consumption or use in any foreign country. Moreover, Congress has expressly authorized the Price Administrator to engage in the "purchase of commodities in order to obtain information or evidence of violations of price, rent, or rationing regulations or orders." Emergency Price Control Act 56 Stats. 23 § 201(c), as amended in 1944, 50 U.S.C.A. Appendix § 921(c), and local ration boards are agents of the Price Administrator. There is likewise no merit to the suggestion that the mechanics of violation discovery were unlawful and so invalidated the prosecution because the coupons tendered were issued by a local ration board rather than from Washington as required by the regulations, since Congress has expressly authorized the purchase of commodities for the purpose of obtaining evidence.

The Second War Powers Act became effective March 27, 1942, 50 U.S.C.A.Appendix § 631 et seq. The ration authority granted to the President by Title 3 of that Act, was delegated to the chairman of the War Production Board with power to redelegate it to the Office of Price Administration as he saw fit. E. O. 9125, 7 F.R. 2719. By later orders the chairman of the War Production Board redelegated to the Office of Price Administration so much of such authority as related to the sale, delivery or other disposition of gasoline by any person to any consumer. 7 F.R. 9121 amended July 1, 1943, 8 F.R. 9868. Under this authority there was issued from the Office of Price Administration, gasoline order 5C, effective November 9, 1942. Insofar as here applicable, the regulation reads: "In the case of a serially numbered coupon issued in strips in connection with an identifying folder, the transferor, at the time of transfer, must require presentation of the coupons and the identifying folder.

No transfer (of gasoline) may be made pursuant to this sub-paragraph in exchange for a coupon which does not bear a serial number included in the sequence of serial numbers specified on the cover of the identifying folder."

This regulation formed the basis for indictment and prosecution, with the obligation to comply and the penalty for failure so to do established by Congress in § 2(a) (5) of the Second War Powers Act, 50 U. S.C.A.Appendix §§ 633, 1152(a) (5). The court took judicial notice of regulation 5C as it appears in the Federal Register, and this is assigned and urged as error.

The argument is tenuous and must be rejected. The Federal Register Act, 44 U.S.C.A. § 307(d), provides: "The contents of the Federal Register shall be judicially noticed and, without prejudice to any other mode of citation, may be cited by volume and page number." The appellants contend that the application of this provision is precluded by a provision in the Stabilization Extension Act of 1944, subsection (e), § 921, 50 U.S.C.A.Appendix which provides that agencies, offices or officers of the government exercising supervisory or policy-making powers over the Office of Price Administration, shall exercise such powers only through formal written orders or regulations which shall be published in the Federal Register, "but shall not otherwise be subject to the provisions of the Federal Register Act." Manifestly, this section applies to supervisory and policy-making power over the OPA, while the Administrator is himself the OPA. It is true that he exercises supervisory powers over his subordinates, but he is subject to the policy-making power of superiors in the government, and it is to the supervisory and policy-making orders of such superiors that the provision in the Emergency Price Control Act applies. The Price Administrator is not to be distinguished from the Office of Price Administration any more than the Federal Housing Administrator, acting in his official capacity, is to be distinguished from the Federal Housing Administration. Federal Housing Administration v. Burr, 309 U.S. 242, 249, 250, 60 S.Ct. 488, 84 L.Ed. 724.

The complaint that the court erred in failure to grant an instruction that law-enforcing officers of the United States are not "consumers" within the meaning of regulation 5C, need not long delay us. By subsection 6, a consumer is any person ac-

quiring gasoline for use. The fact that the gasoline purchased by the agents was purchased for the purpose of providing evidence of law violation, does not remove the agents from their classification as consumers. The gasoline was put into the tanks of their private cars and was, to some degree, actually consumed. To the appellants, the agents were consumers and not government officers.

Insofar as it is here urged that the conviction of the appellants was the result of war hysteria, and that their sentences will now seem harsh, in view of general laxity in enforcement and the recent abrogation of all rationing restrictions, such contentions can have no place in the consideration of assigned errors in the proceedings below. They are matters entirely for the exercise of discretion by the District Court in the imposition of sentence, and while they may still be considered when the appellants return to the District Court for commitment in the execution of sentences there imposed, in respect to placing the appellants upon probation or suspending their sentences, Nix v. James, 9 Cir., 7 F.2d 590; Kriebel v. United States, 7 Cir., 10 F.2d 762; Evans v. District Judge, 6 Cir., 12 F.2d 64; Ackerson v. United States, 2 Cir., 15 F.2d 268, and Pernatto v. United States, 3 Cir., 107 F.2d 372, 373, provided no part of the sentences have been served, United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309, this is a discretionary determination over which we neither may nor do exercise direction or control.

The several judgments are affirmed.