**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph A. GARGANO, Defendant-Appellant.**

**No. 15411.**

United States Court of Appeals Sixth Circuit.

Dec. 11, 1964.

---

William J. Dammarell and John T. McHugh, Cincinnati, Ohio, for appellant.

Arnold Morelli, Cincinnati, Ohio, Joseph P. Kinneary, U. S. Atty., Ronald G. Logan, Asst. U. S. Atty., on brief, for appellee.

Before MILLER and CECIL, Circuit Judges, and McALLISTER, Senior Circuit Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The defendant, Joseph A. Gargano, along with co-defendants, John P. Radican, Arlie C. Bush, William J. Van Detti and Nick Iacobucci, were indicted for unlawfully conspiring to commit an offense against the United States, namely, to fraudulently and unlawfully import and facilitate the transportation of a narcotic drug into the United States, in violation of Section 174, Title 21 United States Code.[1]

The charges were dismissed against Radican and Iacobucci after Radican had pleaded guilty to an indictment under Section 1403, Title 18 United States Code, a related offense involving the same circumstances as in the present case. Bush entered a plea of guilty. Gargano and Van Detti entered pleas of not guilty. The jury returned a verdict of guilty against Gargano and a verdict of not guilty against Van Detti. Gargano received a sentence of ten years and Bush received a sentence of five years. Gargano has taken the present appeal.

The Government introduced only two witnesses, Radican and Bush. There

---

1. Section 174, Title 21, provides: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilities the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000."

were only two witnesses for the defendant, namely, Gargano, himself, and a customs agent, who, however, did not testify as to the merits. The Government's evidence, which was denied in part by Gargano, showed the following. Radican, a student at the University of Dayton, met Gargano in November 1960 at the Yorkshire Club, a gambling house in Newport, Kentucky, where Gargano was employed as a floor manager. In late 1960 or early 1961 Radican got in some kind of trouble in Newport and contacted Gargano to help him. In May 1961 Radican, while in Cincinnati, telephoned Gargano at his home and asked him if there were any places to do some gambling. Gargano told him that everything was shut down. There is no dispute about the fact that in these three conversations there was nothing said about narcotics.

About early March 1962 Radican phoned from Dayton to Gargano in Cincinnati and told him that he "had a source of white stuff" and asked Gargano if he knew what he was talking about. Gargano said that he did, but that he didn't want anything to do with it at that time, that he never dealt in narcotics and didn't want to deal in them. Radican asked Gargano if he knew anybody that did. Gargano said that he would try to get hold of someone if Radican was seriously interested in it, but he didn't want anything to do with it himself. Radican phoned Gargano again some days later, at which time Gargano said he didn't have anyone as yet. Radican called Gargano again in three or four days and Gargano told him that the person who was interested would give Radican a call.

On March 13, 1962, Gargano phoned Radican to meet him about 4:00 or 4:30 P.M. at Seventh and Scott Streets in Covington, Kentucky. Radican kept the appointment and met with Gargano in Gargano's car. Gargano brought the codefendant Bush with him and introduced him to Radican as "Al" without using any last name, as previously agreed on by Gargano and Bush. Radican showed Gargano and Bush a letter from a soldier named John Spilman in Korea. The letter referred to a "little deal" of some time previously, stated that he (Spilman) had located a good source and was willing to go along with Radican and made inquiry about the amount to be handled and details "about the set-up." Spilman said in the letter that he thought heroin was the best bet and that he could get it in bulk form and about 90% pure. At this meeting arrangements were made among the three of them for Bush to take care of any heroin that Radican could get into the country, that Radican was to contact Gargano by telephone if he got any heroin into the country, and, in turn, Gargano would contact Bush. Gargano did not like the use of the word "heroin" in the letter and told Radican to refer to it thereafter as a "pair of pants."

Gargano, in testifying in his own behalf, admitted receiving the telephone call from Radican asking him if he knew anybody who would be interested in disposing of the narcotics and that he told Radican that he would see what he could do for him, but he said that he had no intention of doing so and said what he did to stall him off and in the hope that Radican would forget about it and leave him alone. Gargano also admitted that he picked up Bush in his automobile on March 13, 1962, and took him to the meeting with Radican in Gargano's car, but stated that when he saw the word "heroin" in Spilman's letter, he didn't read the letter, and told Radican and Bush that they were both crazy and that he was leaving. He testified that he then left the automobile, went into a drug store, and took no part in the ensuing discussion. Both Radican and Bush testified that Gargano at no time left the automobile.

About June 1, 1962, Radican phoned from Dayton to Gargano in Cincinnati that he needed money to send to Korea to pay for heroin. Gargano said that he would contact Bush and see what he could do. Gargano contacted Bush and requested him to give Radican $200.00

or $300.00. Gargano said he would stand good for it. Bush sent Radican $240.00, $200.00 of which Radican sent to Spilman in Korea.

About July 11, 1962, Radican called Gargano from Dayton and told him that a man called "Joseph Martin" was in town and had "the pants" with him, which was the term the parties had agreed to use in referring to heroin, and wanted to speak to the parties from Covington and Newport. Gargano contacted Bush by telephone, told him that the package had arrived, and to call Radican, giving him Radican's telephone number. Bush telephoned Radican and arranged to meet him at 11:30 P.M. that evening in Dayton. Bush drove to Dayton from Newport, Kentucky, stopping at Cincinnati on the way in an effort to get Gargano to go with him. Gargano said he was not able to go because his wife was out and he was taking care of the children at the time. Bush met Radican at the Biltmore Hotel in Dayton. Radican and Bush then proceeded to a motel in Dayton where, after a conversation with a person named "Joseph Martin," they were arrested. "Martin" was an undercover agent of the United States Customs, using an assumed name. It is admitted that no heroin was found at that meeting.

The Government did not prove and does not contend that any narcotic drug was brought into the United States by Spilman, Radican, Bush or Gargano.

Viewing the foregoing evidence in the light most favorable to the Government, it seems clear that if actual importation of a narcotic drug into the United States is not necessary to constitute the offense charged, there was sufficient evidence to take the case to the jury and that it was not error on the part of the District Judge to overrule appellant's motions for a judgment of acquittal made at the close of the Government's case and at the conclusion of all the evidence.

■ Appellant's main contention, presented in several different ways in his Statement of Questions Involved, is that he is not guilty as a matter of law of knowingly importing any narcotic drug into the United States or of conspiring to commit any such act, contrary to the provisions of Section 174, Title 21 United States Code, because it appears as an undisputed fact that no narcotic drug was actually imported into the United States by the appellant or any of his co-defendants. We find no merit in this contention.

If the indictment charged the commission of the substantive offense of knowingly importing a narcotic drug into the United States, the contention would obviously have merit. It will be noted, however, that the statute is double barreled. It not only prohibits the substantive offense of importing a narcotic drug into the United States, but, also, in the alternative by the use of the word "or" prohibits a conspiracy to commit the substantive offense. The indictment in the present case does not charge the commission of the substantive offense, but, on the contrary, charges a conspiracy to commit the substantive offense.

■ It is settled law that a conspiracy to commit an offense can be made a separate offense from the commission of the substantive offense itself. Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489; Callanan v. United States, 364 U.S. 587, 593, 81 S.Ct. 321, 5 L.Ed.2d 312, rehearing denied, 365 U.S. 825, 81 S.Ct. 687, 5 L.Ed.2d 703; United States v. Agueci, 310 F.2d 817, 828, C.A. 2nd, cert. denied Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11.

■ It is also settled law that the conspiracy agreement is punishable, even though the contemplated crime is not consummated. United States v. Bayer, 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654, rehearing denied, 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368; Goldman v. United States, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Frankfeld v. United States, 198 F.2d 679, 684, C.A.4th, cert. denied, 344 U.S. 922, 73 S.Ct. 389, 97 L.Ed. 710, rehearing denied, 345 U.S. 913, 73 S.Ct. 652, 97 L.Ed. 1348; Han-

ford v. United States, 231 F.2d 661, 662, C.A.4th; United States v. Sykes, 305 F.2d 172, 176, C.A.6th, reversed on other grounds, sub nomine, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

Appellant also contends that the Government failed to prove the necessary element of intent. He relies upon the testimony of the co-defendant Radican, testifying as a Government witness, in which he said that when he first contacted Gargano about helping him dispose of the "white stuff" which the witness could procure, Gargano told him that he never dealt in narcotics, that he didn't want to deal in them, and that he didn't want anything to do with narcotics. It is argued that the Government is bound by the testimony of its own witness, Radican, which expressly negatives intent. Appellant's reliance upon such isolated statements of the witness Radican is too narrow to support his contention. This same witness also testified that when he first contacted the appellant he stated that he didn't want to have anything to do with it "at that time." He also testified about the actual participation of the appellant later in furtherance of the alleged conspiracy. The testimony of this witness in its entirety strongly supports the existence of intent rather than constituting a denial of intent on the part of the appellant. Ryan v. United States, 99 F.2d 864, 868, C.A.8th, cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037, rehearing denied, 306 U.S. 668, 59 S.Ct. 586, 83 L.Ed. 1063.

Appellant contends that his sentence of 10 years was inequitable and unfair when considered in the light of the sentence of 5 years received by Bush, who had a previous conviction for armed robbery. The matter of the imposition of sentences is solely within the province of the trial judge so long as they are within the statutory limit set by Congress. Costner v. United States, 271 F. 2d 261, 263, C.A.6th, cert. denied 362 U.S. 952, 80 S.Ct. 866, 4 L.Ed.2d 870; DeMars v. United States, 254 F.2d 594, C.A.6th; Shaw v. United States, 151 F.2d 967, 971, C.A.6th. Under this well recognized rule it has been held that a defendant has no valid ground of complaint solely because a co-defendant receives a more favorable sentence than he. United States v. Mann, 108 F.2d 354, 356, C.A.7th; Dillon v. United States, 113 F.2d 334, 339, C.A.8th, cert. denied, 311 U.S. 689, 61 S.Ct. 71, 85 L.Ed. 445. However, it was held in United States v. Wiley, 278 F.2d 500, 503, C.A.7th, that in an exceptional case, where the facts point convincingly to the conclusion that the district court has, without any justification, arbitrarily singled out a minor defendant for the imposition of a more severe sentence than that imposed upon the co-defendants, the appellate court has the power to correct the disparity in the exercise of its supervisory control of the district court in aid of its appellate jurisdiction. See also: Yates v. United States, 356 U.S. 363, 366–367, 78 S.Ct. 766, 2 L.Ed.2d 837; Livers v. United States, 185 F.2d 807, 809, C.A.6th; Bozel v. United States, 139 F.2d 153, 156, C.A. 6th, cert. denied, 321 U.S. 800, 64 S.Ct. 937, 88 L.Ed. 1087, rehearing denied, 322 U.S. 768, 64 S.Ct. 1054, 88 L.Ed. 1594. In the present case the evidence was to the effect that the appellant was a principal conspirator, and in fact the one who brought Bush, his co-defendant, into the conspiracy. We find no arbitrary abuse of the sentencing power in the present case.

We find no merit in appellant's complaint about the instructions to the jury. In addition to the fact that no objection was made at the time, as required by Rule 30, Rules of Criminal Procedure, we do not find any prejudicial error. Rule 52 (a), Rules of Criminal Procedure.

The judgment is affirmed.