**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harry Earl JACKSON, Defendant-Appellant.**

**No. 19519.**

United States Court of Appeals Sixth Circuit.

Feb. 3, 1970.

As Amended On Denial of Rehearing March 11, 1970.

Eugene D. Smith, Cincinnati, Ohio, for defendant-appellant.

Robert A. Steinberg, Cincinnati, Ohio, for plaintiff-appellee; William W. Milligan, U. S. Atty., Cincinnati, Ohio, on the brief.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Harry Earl Jackson appeals from a judgment, entered upon a jury's verdict, finding him guilty of both counts of an indictment which charged him and others with conspiracy to receive and have possession of chattels, moving as part of an interstate shipment, known by them to have been stolen (Count I); and with the substantive offense of receiving and having possession of such stolen chattels (Count II). The foregoing conduct was alleged to be in violation of Title 18, United States Code, Section 659, and also, as to Count I, in violation of Section 371.

The stolen chattels turned out to be a truck-trailer load of White Satin Gin, stolen from a truck parking lot in Cincinnati, and transported to Columbus, Ohio. Our observation that the stolen chattels "turned out to be" White Satin Gin is made because the thieves originally planned to steal a truckload of Four Roses Whiskey and sell it to a prospective purchaser of whiskey. Upon arrival of the truck at Columbus, Ohio, and the discovery there that the cargo contained White Satin Gin instead of Four Roses Whiskey, the obviously discriminating buyer refused to receive it. The original conspirators and thieves, as a consequence, had a large supply of "hot" gin on their hands with no purchasers immediately in sight. It was at this time that appellant Jackson—the proprietor of a Cincinnati business identified as Steve's Pony Keg—became involved. He was not one of the original conspirators and transporters of the stolen goods.

Through others who had learned of its availability, appellant was given the opportunity to acquire at favorable prices what was described to him as "hot" gin. Jackson told a friend, identified as Sam Sakellariou, of his access to a supply of such gin. Sam thought he could find a buyer for some of the gin. Upon Sam's advice that a man identified as Edwards would buy 100 cases of the gin at a price of $20.00 per case, Jackson made contact with those who could deliver the gin and was told that the price to Jackson and his then confederate would be $12.00 per case. It was arranged that delivery would be made the next day. That evening, by arrangement with his friend Sam, Jackson arrived at a warehouse to meet the customer named Edwards. Edwards, however, was in truth Agent Kenney of the FBI. Kenney asked appellant if he could have 200 cases instead of the 100 originally requested. Appellant agreed and told Kenney that the price would be $22.00 per case—a

bargain for "hot" gin—as the retail price of equally palatable gin was $49.00 per case.

The next morning, two of the original and "thwarted" whiskey thieves arrived at an appointed warehouse with 200 cases of the stolen White Satin Gin. Jackson, with two of the other conspirators, met the shipment. Agent Kenney, the purported purchaser Edwards, opened the door of the warehouse and appellant directed the truck with the gin to back into the warehouse. As the truck was being unloaded and just before appellant and his then associate, Matthews, were about to ask for the purchase price, FBI Agents closed in and arrested all of the then present participants in the criminal undertaking.

Four of the five who, with Jackson, were named in the indictment entered pleas of guilty on the eve of trial and testified for the government.

Appellant's Statement of Issues Presented for Review produces the following subjects for our consideration.

### 1. *Refusal to identify informer.*

Sam Sakellariou, who put appellant in touch with the prospective buyer, Agent Kenney, alias Edwards, was not charged with any offense, and was not subpoenaed or called as a witness. The government refused to divulge the name of the informer who led Agent Kenney to the meeting with appellant Jackson.

■ The District Judge held an *in camera* interview with the confidential informant, employing the guidelines set out by Judge Combs, speaking for this Court in United States v. Lloyd, 400 F. 2d 414, 416 (6th Cir. 1968), and determined that informant's testimony and identity was not relevant or helpful to Jackson's defense. He held that disclosure of the informant's identity was not essential to a fair determination of the trial. In view of the testimony of Kenney, the conspirators, and that of Jackson himself, we hold that such determination was proper. In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1

L.Ed.2d 639 (1957), the Supreme Court said:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 628.

We are satisfied that the District Judge's handling of the matter was consonant with the foregoing admonitions. Also, our review of the transcript of the District Judge's *in camera* examination of the informant discloses further support for his ruling.

### 2. *Had the conspiracy ended?*

■ Count I of the Indictment charged that appellant Jackson joined in a conspiracy to receive and have in his possession 203 cases of White Satin Gin. Jackson was not a party to the beginning of the conspiracy at Cincinnati, and was not acquainted with the men who first planned the illegal enterprise. However, after the disappointment that followed discovery that their cargo was gin instead of whiskey, the objective of the conspiracy was pursued, viz: the receipt and possession of a cargo that had been stolen from an interstate shipment, knowing that such cargo had been stolen. Following the loss of the first intended buyer, the conspiracy to receive and possess the gin was pursued, and Jackson joined it. Except for the intrusion of the government agent, appellant would have been the most effective instrument in bringing to fruition the objective of the conspiracy—the ultimate disposition of. the stolen goods. We are of the view that it was not necessary to Jackson's guilt that he be a part of the original conspiracy if he joined it while it was still in operation.

"The agreement (of conspiracy) need not be entered into by all the parties at the same time, but may be reached by successive actions evidencing their joining of the conspiracy." 16 Am. Jur.2d "Conspiracy" § 7, p. 132. See also, Interstate Circuit v. United States, 306 U.S. 208, 226, 227, 59 S.Ct. 467, 83 L.Ed. 610 (1939), and United States v. Agueci, 310 F.2d 817, 827, 99 A.L.R.2d 478 (2nd Cir. 1962).

We are not persuaded that the conspiracy ended, as claimed in appellant's brief, "when the parties delivered gin instead of whiskey." That the total undertaking continued to the day it ran afoul of the FBI is demonstrated by the fact that when the 203 cases of White Satin Gin arrived at the place of planned delivery, it was brought there by two of the original conspirators. They had obviously retained the stolen cargo, notwithstanding their disappointing discovery that it was White Satin Gin instead of Four Roses Whiskey.

### 3. Was the charge of the indictment established?

■ Appellant asserts that the proofs established only that the conspiracy was to steal the goods and not to receive and possess them, as charged in the indictment. We are not sure that we fully understand the thrust of this contention. However, this Court, as well as others, has held that under 18 U.S.C. § 659, stealing from an interstate shipment and receiving the stolen property knowing it to have been stolen constitute separate offenses. Carroll v. United States, 174 F.2d 412, 413, 414 (6th Cir. 1949).

### 4. Sufficiency of the evidence.

■ In testing the propriety of denial of a motion for acquittal charging insufficiency of the evidence, we apply the rule that such evidence and the legitimate inferences to be drawn therefrom are to be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) and United States v. Luxenberg, 374 F.2d 241, 248 (6th Cir. 1967).

The facts which we have recited above are those which the jury could find from the evidence before it. Appellant Jackson testified in his own behalf. His own account attempted to portray him as an innocent participant in the described transactions. It did, however, show that he was one of the chief actors in the arrangements for the sale and delivery of the "hot" gin. We cannot fault the jury for failing to believe all of his account. We are satisfied that the denial of the motion was proper.

### 5. Severity of the sentence.

Jackson was sentenced to two years imprisonment under Title 18, United States Code, Section 3651, six months of such sentence to be served in jail and probation was ordered for the balance of the sentence. He was also fined. He charges that such sentence was overly severe when contrasted with less severe sentences imposed on some of those who were convicted by their pleas of guilty.

■■ There is nothing before us to suggest that Jackson's sentence was imposed as a penalty for his standing trial, in contrast to the pleas of guilty by his codefendants. See United States v. Wiley, 267 F.2d 453 (7th Cir. 1959) and United States v. Wiley, 278 F.2d 500 (7th Cir. 1960). While legislation has been offered to empower us to reduce sentences, it has not been adopted. We accordingly adhere to our own rule that we "are powerless" to intervene, as announced in Beckett v. United States, 84 F.2d 731, 732, 733 (6th Cir. 1936). We have not departed from that rule. Livers v. United States, 185 F.2d 807 (6th Cir. 1950); Costner v. United States, 271 F.2d 261 (6th Cir. 1959); United States v. McGuire, 328 F.2d 303 (6th Cir. 1964); United States v. Gargano, 338 F.2d 893 (6th Cir. 1964). We find no abuse of discretion by the District Judge, nor is there any circumstance here which would prompt us to suggest to him to reconsider the sentences imposed, as we did in United States v. West Coast News, Co., 357 F.2d 855 (6th Cir. 1966).

The judgment is affirmed.