915 F.2d 1573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin Leroy BROOKS, Defendant-Appellant.
 No. 89-6283.
 United States Court of Appeals, Sixth Circuit.
 Oct. 2, 1990.
 
 Before BOYCE F. MARTIN, Jr., and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 On March 14, 1989, Detective Gary Lomenick of the Narcotics Division of the Chattanooga Police Department, received information from a confidential informant regarding an impending drug transaction. Lomenick testified that he knew the confidential informant to be a reliable source because the informant had provided material information on three or four occasions in the past with the information resulting in the arrest and conviction of one major narcotics offender.
 
 
 2
 In the early morning hours of the following day, the confidential informant again contacted Lomenick at his residence, and advised him that a cocaine transaction was planned to occur between 7:00 and 7:30 that morning in a parking lot across from the Erlanger Hospital in Chattanooga, Tennessee. The confidential informant described the supplier in the transaction as a large white male with a beard and with the first name of Calvin; he also provided Lomenick with the specific description of the automobile which would be used in the drug transaction, a red Chrysler K-Car convertible.
 
 
 3
 Based on the information provided by the confidential informant, Lomenick and other law enforcement officials set up surveillance in the area around the Erlanger Hospital. Shortly thereafter, at approximately 7:00 a.m., Lomenick observed a white male who matched the description provided by the confidential informant driving a red Chrysler convertible. At the same time, he noticed that the vehicle occupant appeared to be nervous and anxious, as though waiting for someone. After continuing surveillance for a short time, Lomenick then approached and identified himself as a police officer. He asked the driver of the vehicle to identify himself, and the occupant stated that his name was Calvin Brooks. A subsequent search of the vehicle revealed under the seat approximately one pound of cocaine packaged in 16 one-ounce plastic bags placed in a paper bag.
 
 
 4
 The bag seized from defendant was delivered for fingerprint analysis (and other content analysis). This revealed that one of defendant's fingerprints was on the bottom of the paper bag. No fingerprints were found on the plastic bags.[1]
 
 
 5
 Lomenick arrested defendant Brooks, and a short time later, a Drug Enforcement Administration (DEA) agent questioned defendant. During the course of this questioning, defendant informed agent Smith that he had borrowed the car he was driving the previous day and had vacuumed the car. Defendant insisted that the bag found in the car was not there at that time. Brooks insisted that he had neither seen the bag nor touched it.
 
 
 6
 Later that day, agent Smith and other law enforcement officers searched defendant's residence in Somerville, Georgia. During the course of that search, they discovered two bottles of cocaine cutting agent, radio equipment commonly used by drug traffickers for air-to-ground communications, and charts and maps of airways in South Florida and the Bahamas.
 
 
 7
 A grand jury returned a one count indictment charging defendant with possession of cocaine with the intent to distribute. Prior to trial, Brooks filed a motion to suppress evidence obtained from the search of his automobile.
 
 
 8
 At the suppression hearing, Lomenick testified on behalf of the government. During the course of his testimony, he explained the facts as he had received them from the confidential informant. Lomenick also explained that he was familiar with the basis of the confidential informant's knowledge but that he could not reveal that information without revealing the identity of the informant.
 
 
 9
 Defendant moved for an order compelling the government to identify the informant. Defendant argued that no informant existed, and if in fact there was an informant, he or she did not have "any information, any verifiable information or any real information with reference to what was disclosed."
 
 
 10
 The district court then conducted an in camera hearing with Lomenick. Following that hearing, the court found that Lomenick was credible and that there was indeed an informant. Probable cause was found to exist for the search of defendant's automobile. In addition, the court held that even if the information produced in camera were excluded, the proof presented in open court established probable cause. We find no error in this conclusion under the facts presented at the hearing.
 
 
 11
 The district court denied the defendant's motion to reveal the identity of the confidential informant as well as the suppression motion. Counsel for Brooks then requested an in chambers conference, at which he informed the court that his client would be waiving his right to a jury trial. Brooks then executed a written waiver of his right to a jury trial.[2]
 
 
 12
 During the course of the bench trial, Lomenick again testified with regard to his actions and observations. Brooks again moved for disclosure of the identity of the confidential informant, arguing that it was possible that the confidential informant had set him up or entrapped him. Defendant, however, conceded that he had no information supporting this position.[3]
 
 
 13
 After the close of the government's proof the district court, in response to defendant's motion, questioned the confidential informant in camera. Thereafter, the district court issued a written memorandum in which it concluded: (1) that it was "doubtful" that the defendant had carried his burden of "producing some evidence supportive of a defense which would be helped by testimony of the informant;" and (2) that "the confidential informant did not participate in the defendant's criminal activity and further that the testimony of the confidential informant would not be any help whatsoever to the defendant." The district court, after trial, found defendant guilty of possession of cocaine with the intent to distribute and set a sentencing date.[4]
 
 
 14
 During the course of preparing a presentence report, the probation officer, Charles Hanna, interviewed defendant and questioned him about his financial condition in an effort to determine defendant's ability to pay a fine. Defendant identified some of his assets including approximately $2,000 in a savings account, approximately $3,000 in a checking account, a 1973 Chevrolet Blazer valued at approximately $700, and a residence in Somerville, Georgia. Defendant later told Hanna that he also possessed a gun collection and a 1984 GMC truck. Hanna then asked defendant whether he had "any other assets," and defendant replied that he did not. Defendant was unaccompanied by counsel at this meeting with the probation officer. We find no problem with this procedure.
 
 
 15
 Both the government and defendant filed objections to the presentence report. The focus of the objection filed by the government was the fact that defendant had represented to the Probation and Parole Office that he did not have any assets other than those listed when, in fact, he was the owner of an aircraft valued at between $30,000 and $60,000.
 
 
 16
 The district court held a sentencing hearing and found that defendant did own the aircraft and, further, that defendant failed to disclose this information to the probation officer. Accordingly, the court found that defendant willfully impeded or obstructed the administration of justice and adjusted the defendant's base offense level pursuant to U.S.S.G. Sec. 3C1.1. With the adjustment, the sentencing range applicable to defendant was 63 to 78 months. The district court imposed a 65-month term of imprisonment, a three-year term of supervised release, and a fine of $12,550.
 
 1. Probable Cause
 
 17
 Defendant argues on appeal first that the government did not have probable cause to conduct a warrantless search of his automobile. Specifically, defendant contends that the record contains no direct evidence from which the district court could have made a determination of the basis of the confidential informant's knowledge.
 
 
 18
 A district court's finding of probable cause is reviewed under the clearly erroneous standard. United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988); see also United States v. Perez, 871 F.2d 45, 48 (6th Cir.) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") cert. denied, 109 S.Ct. 3227 (1989). A warrantless search of a lawfully stopped automobile may be conducted when police officers have probable cause to believe that the vehicle contains contraband. United States v. Johns, 469 U.S. 478 (1985); United States v. Ross, 456 U.S. 798 (1982). The scope of the search may extend to "every part of the vehicle and its contents that may conceal the object of the search." Ross, 456 U.S. at 825.
 
 
 19
 Probable cause is a "flexible, common-sense standard" that merely demands that the facts available to a police officer would cause a reasonable person to believe that certain items may be contraband or useful as evidence of a crime. Texas v. Brown, 460 U.S. 730, 742 (1983). Probable cause, moreover, "requires only a probability or substantial chance of criminal activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983). The probable cause requirement does "not demand any showing that such a belief is correct or more likely true than false." Id.
 
 
 20
 Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Thus, in determining whether probable cause exists, the trial court must look to the "totality of the circumstances," and view the facts "as a whole and in a practical manner." Sangineto-Miranda, 859 F.2d at 1508; see also Gates. The totality of the circumstances analysis includes a common-sense assessment of the facts from a law enforcement officer's perspective. United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981).
 
 
 21
 The district court made alternative findings with respect to probable cause, concluding that even if the in camera testimony of the detective were ignored, probable cause existed because the search was based on the statement of a reliable informant whose information was corroborated by police officers on the scene before the search. Defendant, however, contends that the district court's finding of probable cause is clearly erroneous because the government made no showing in open court as to the confidential informant's basis of knowledge.
 
 
 22
 With the established standards in mind, we find no error in the district court's decision that the information presented in open court was sufficient to establish probable cause for the search conducted. First, the information was obtained from a reliable informant whose prior tips had resulted in the arrest and conviction of a major narcotics trafficker in state court. Second, the specifics, including a description of defendant and the car he was driving, as well as time and place, were confirmed by Lomenick before he approached the vehicle to conduct a search. See Alabama v. White, 110 S.Ct. 2412, 2416 (1990).[5] Finally, Lomenick questioned the informant and concluded that the informant was in a position to know about the information he was relating.[6]
 
 2. Constitutional Claims
 
 23
 Defendant argues that his fifth and sixth amendment rights were violated when the district court considered information obtained in camera from the confidential informant and Lomenick during the course of trial. Specifically, defendant alleges that the district court committed reversible error when it rejected defendant's theory of the case on the basis of information obtained from witnesses interviewed in camera.[7] The court, however, based its finding of guilt solely on the facts presented in open court in an alternative finding. There was no constitutional deprivation in the proceedings utilized in this case.
 
 3. Identity of Informant
 
 24
 The Supreme Court has recognized that the government has a privilege not to disclose the identity of persons who furnish information regarding violations of law. Roviaro v. United States, 353 U.S. 53 (1957). The privilege of the government to withhold the identity of an informant is especially crucial in cases involving the sale and distribution of narcotics. See United States v. Whitley, 734 F.2d 1129, 1138 (6th Cir.1984) (quoting United States v. Lloyd, 400 F.2d 414, 415 (6th Cir.1968)). The question of disclosure generally rests in the first instance with the trial court. United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986). Courts have traditionally used in camera interviews "to assess the relevance and possible helpfulness of the informant's identity to the defense." Id.; Lloyd, 400 F.2d at 417. We have held that "a preliminary in camera interview of the informant is the appropriate procedure before ordering disclosure." Sharp, 778 F.2d at 1187; United States v. Jackson, 422 F.2d 975, 977 (6th Cir.1970) (affirming the district court's finding following an in camera interview that "informant's testimony and identity was not relevant or helpful to [defendant's] defense").
 
 
 25
 At the conclusion of the trial, the district court took the case under advisement and informed the parties that it would file at a later time an order addressing defendant's motion to disclose and defendant's innocence or guilt. A review of the district court's orders suggest that the district court neither abused its discretion in denying defendant's motion for disclosure nor violated defendant's fifth or sixth amendment rights. The district court's order finding the defendant guilty makes no reference to any facts obtained in camera and appears to be based only on those facts presented in open court.
 
 4. Sentence
 
 26
 Finally, defendant contends that the district court erred when it increased defendant's base offense level by two levels under U.S.S.G. Sec. 3C1.1 for willfully impeding or obstructing justice. Defendant argues that he never made an active or affirmative misstatement about his ownership of a Cessna airplane.
 
 Guideline Sec. 3C1.1 provides:
 
 27
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.
 
 
 28
 U.S.S.G. Sec. 3C1.1 (1989). The commentary to U.S.S.G. Sec. 3C1.1 provides for a sentence enhancement for "a defendant who engages in conduct calculated to mislead or deceive authorities." U.S.S.G. Sec. 3C1.1 Comment. The Application Notes instruct that "[f]urnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court" will subject a defendant to an adjustment under Section 3C1.1. U.S.S.G. Sec. 3C1.1, Comment. (n. 1(e)). "In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." Id. at Comment. (n. 2). The provision makes no reference to warnings or whether defendant is accompanied by counsel in making statements to a probation officer.
 
 
 29
 The district court's finding that defendant obstructed justice is a factual conclusion which this court reviews for clear error. 18 U.S.C. Sec. 3742(e). Viewing the statement in question in a light most favorable to defendant, there is no error here. The probation officer asked the defendant on two different occasions about his assets and informed defendant of the purpose for which he was inquiring about the assets. Defendant indicated that he had no other assets when, in fact, he was part owner of an aircraft. The record supports a finding that defendant knew of his ownership of the airplane and thus intentionally deceived the probation officer. See United States v. Christman, 894 F.2d 339 (9th Cir.1990) (concluding that upward adjustment for obstruction of justice not clearly erroneous where defendant knew about a previous felony conviction and intentionally furnished a falsehood to probation officers). We conclude that the district court's finding of obstruction of justice and imposition of sentence accordingly is not erroneous under these circumstances.
 
 
 30
 We, therefore, AFFIRM in all respects.
 
 
 
 [1]
 During the trial, the fingerprint expert explained that although paper bags generally retain surface fingerprints, plastic bags do not
 
 
 [2]
 At the bench trial, Brooks reiterated that he had consulted with his attorneys in deciding to waive his right to a jury trial
 
 
 [3]
 The court again held an in camera discussion with Lomenick, but declined to rule on Brooks' motion at this juncture
 
 
 [4]
 On July 21, 1989, Brooks and Harold Hunter were arrested by agents of the TBI and DEA for conspiracy to possess four kilograms of cocaine with the intent to distribute. Brooks and Hunter were indicted by a federal grand jury on July 25, 1989. Thereafter, defendant was held without bond pending sentencing
 
 
 [5]
 The Court stated in White:
 We think it also important that, as in Gates, "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Gates, 462 U.S. at 245. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information--a special familiarity with respondent's affairs.
 Id. at 4749 (emphasis in original).
 
 
 [6]
 Further evidence of the district court's prudent handling of this case is the number of in camera hearings held, as well as the alternative findings issued
 
 
 [7]
 At the conclusion of trial the court stated:
 The Court has, however, interviewed the police officer in-camera, Detective Lomenick. And the Court concludes that on the basis of that interview, that there is no reasonable possibility in the Court's mind that the Defendant's theory regarding the placement of the or planting of the drugs can be a possibility.
 And that's based upon facts that I gleaned from Detective Lomenick about the informant and how this all came about. That person is not apparently available....