**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Alvin G. SHARP, Defendant-Appellee.**

Nos. 84–1059, 84–1104.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 7, 1985.
Decided Dec. 10, 1985.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Wayne F. Pratt, argued, for plaintiff-appellant.

Darwyn P. Fair, Federal Defender Office, Detroit, Mich., Miriam L. Siefer, argued, for defendant-appellee.

Before ENGEL and WELLFORD, Circuit Judges, and ROSENN *, Senior Circuit Judge.

PER CURIAM.

The issue in this appeal is whether the district court properly dismissed the government's indictment, prior to trial, for the government's failure to comply with an order to produce an alleged informer. The disclosure order was based upon unsworn assertions of defense counsel that the alleged informer's identity was relevant and helpful to the defense of entrapment which counsel represented would be relied upon at trial. We hold that the district court's orders were premature and accordingly REVERSE.

## I.

On June 30, 1983, a federal grand jury returned a three-count indictment against Alvin G. Sharp charging conspiracy to distribute heroin in violation of 21 U.S.C. § 846, distribution of heroin in violation of 21 U.S.C. § 841(a)(1), and the unlawful use of a communication facility in violation of 21 U.S.C. § 843(b). Government discovery materials indicated that defendant Sharp sold heroin to an undercover officer on October 6, October 11, and October 26, 1982. The sale on October 6, 1982, was made in the presence of an individual labeled as "DN–4849," who helped make arrangements for the meeting, and an unidentified black male companion who accompanied Sharp. According to the materi-

---

* Honorable Max Rosenn, United States Court of Appeals for the Third Circuit, sitting by designa-tion.

als, all subsequent arrangements, meetings, and heroin sales were conducted between the undercover officer and Sharp, in the absence of DN-4849. At a hearing on October 20, 1983, defense counsel for Sharp represented that

> Mr. Sharp's defense of this charge is simple. It is entrapment. That's his defense. His defense of entrapment stems from a confidential informant whose name is Dwight Finley. This individual is an individual who entrapped Mr. Sharp into the acts that were alleged in the indictment.

In addition to asserting that Sharp's defense would be entrapment, that DN-4849 was a confidential government informer, and that he believed DN-4849 is one Dwight Finley, Sharp's defense counsel stated the facts surrounding the alleged entrapment. Counsel represented that in late September of 1982, Finley, who knew Sharp from when they served time together, went to Sharp's house to borrow some money for gas. A week later, Finley contacted Sharp and told him that he wanted to come by and talk to him about some things. Sharp, not knowing why he wanted to come by, told him that they should get together. The attorney's unsworn narrative continued:

> Mr. Finley went to where Mr. Sharp was, and at that time, it was either late September or early October, told Mr. Sharp that he wanted him to sell some drugs for him; that he was in the drug business; and that he had some easy marks in the Detroit area that he could sell drugs to. And he wanted Mr. Sharp to help him.
>
> He said he'd finance and he'd protect him and he needed someone to sell some drugs. He needed some partners.
>
> Well, Mr. Sharp refused. He was, I believe, paroled at that time and as I indicated he was getting his life together and he had absolutely no desire to get into the drug business with Mr. Dwight Finley.
>
> Well, Mr. Finley didn't give up. He kept on prodding Mr. Sharp, continuously

telling him: Come on. This is an easy deal. You don't have anything to worry about. Put up a little front money and we'll make a lot of money for ourselves and your business that you are trying to get off the ground, you will have enough business to get your—you will have enough money to get your business going.

> Mr. Sharp still refused. And then Mr. Finley made the deal sweeter. He told him that he wouldn't have to come up with any money. He wouldn't have to buy any drugs. He wouldn't have to set up any deals. The only thing that he would have to do was sell drugs. Mr. Finley was going to do everything. And in fact, he did.

Defense counsel later stated, "it was only one time that Mr. Finley gave Mr. Sharp the drugs for all the transactions. And after the drugs were gone, there were no more transactions." He also asserted that another "individual ... could testify as to Mr. Finley giving Mr. Sharp a package before October the 6th."

Defense counsel concluded that "if we contact Mr. Finley, he will corroborate Mr. Sharp's testimony or Mr. Sharp's statement of his position in this case; and that position being that he was entrapped." Later, he said that "if we ask Mr. Finley, well, did Mr. Sharp readily agree, I'm sure his response would be, no, he did not readily agree. Which would indicate that he did not have a predisposition." Although Sharp had a prior criminal record, his counsel stated that it did not include any drug involvement. For these reasons counsel urged that he should be allowed to interview Dwight Finley and, more important, ascertain whether Finley was a government informer.

At the hearing, the government stated that it would neither confirm nor deny that DN-4849 was a government informer or that Dwight Finley was DN-4849, but would assume for argument only that DN-4849 was an informer. The government first argued that DN-4849 was a mere introducer:

[T]he only part—that this person said to have observed is the first of four overt acts which are alleged as part of a conspiracy. The transaction of October 6th, that which the alleged confidential informant is said to have observed is the first of four overt acts which are alleged as part of a conspiracy. The transaction of October 6th, that which the alleged confidential informant is said to have been present, is not charged as a substantive count before this Court.

Second, the government contended that "an offer of proof or a representation by counsel [of the entrapment defense] is simply not a sufficient showing to meet the defendant's burden of disclosure."

The district court subsequently held *in camera* hearings with each counsel individually. No *in camera* interview of the alleged confidential informer was ever conducted by the district court. Upon review of each counsel's oral offers of proof, the district court ordered the disclosure and production of the informer finding that disclosure was both relevant and helpful to Sharp's defense and essential to a fair determination of the issues in the case. The government then filed a motion for reconsideration in which it asked the district court to conduct an *in camera* interview of the alleged confidential informer before ordering him turned over to the defendant. On December 22, 1983, the district court denied the motion for reconsideration. Subsequently, the district court entered an order dismissing the government's indictment with prejudice for failing to produce the informer. This appeal followed pursuant to 18 U.S.C. § 3731.

## II.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court recognized the government's privilege [1] to withhold from disclosure the identity of persons who furnish information of criminal activities to law enforcement officials. The purpose of the privilege is to further effect law enforcement by encouraging citizens to communicate their knowledge of criminal activities to law enforcement officials. The rationale is that citizens will be more likely to communicate their knowledge of criminal activities if their anonymity is preserved. *Id.* at 59, 77 S.Ct. at 627. The privilege, however, is not absolute, but is limited by the fundamental requirements of fairness:

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Id.* at 60–61, 77 S.Ct. at 627–628 (footnote omitted).

In *Roviaro*, the evidence at trial showed that the unidentified informer drove his car to a prearranged meeting place whereupon Roviaro entered the car. At this time, a government agent was in the trunk of the car, and three other agents followed in two government cars. After driving throughout the city, Roviaro got out of the informer's car, went to a nearby tree, picked up a small package, returned to the car, made a motion as if depositing the package in the car, and then walked away. The government agents immediately retrieved a package from the informer's car. The package contained heroin. Since the informer was the sole participant, other than the accused, in the transaction and was the only witness in a position to amplify or contradict the testimony of government witnesses the Supreme Court held that disclosure was required.

The Supreme Court, however, declined to establish a fixed rule as to when disclosure would be required.

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a

---

**1.** Although usually referred to as the informer's privilege, the privilege is in reality the government's privilege to withhold from disclosure certain information. *Roviaro,* 353 U.S. at 59, 77 S.Ct. at 627.

proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628–629.[2]

As presented on appeal, the posture of this case is in marked contrast to the posture in *Roviaro.* In the instant case, the decision to compel disclosure was made prior to trial based upon assertions of counsel. In *Roviaro* and nearly all other cases, review arose upon direct appeal from a conviction; thus, the full trial record was available to determine whether or not disclosure was proper. An exception is *United States v. Jiles,* 658 F.2d 194 (3d Cir.1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 465 (1982), where the trial court also dismissed the government's indictment prior to trial for the government's failure to produce a confidential informer. The Third Circuit reversed, finding that excessive danger of physical harm to the informer, as stated in *in camera* government affidavits, outweighed the limited utility of that witness to any potential defense. The "mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro.*" 658 F.2d at 197. The court stated that no entrapment defense was involved, and although an eyewitness, the informer's testimony would probably be cumulative. In *Jiles,* the trial court determined whether the informer's testimony would be helpful and relevant to the defense on the basis of affidavits and testimony of witnesses at a pretrial hearing, not upon mere assertions of counsel.

### III.

 The government's privilege is usually asserted to protect the identity of an informer, and "once the identity of an informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627. The interests protected by the privilege, however, often extend beyond identification of the informer. Thus, for the informer's safety, disclosure of the informer's location has been denied although the informer's name is known. *United States v. Tenorio-Angel,* 756 F.2d 1505, 1510 (11th Cir.1985). In addition, the precise relationship between the government and an individual has been denied pursuant to the privilege. In *United States v. Paoli,* 603 F.2d 1029 (2d Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 264, 62 L.Ed.2d 182 (1979), defense counsel wanted to know the precise relationship between the government and a woman named Lorraine, who introduced an undercover agent to the defendant, in hope that such information would help an entrapment defense. Disclosure was denied. Sharp's counsel also desires to know the precise relationship, if any, between an individual (Finley) and the government. Since disclosure of such information would inhibit the flow of information of law enforcement officials, we hold that the government's privilege applies to the disclosure.

Sharp's counsel desires to interview Finley to ascertain whether he was a government informer and to confirm the allegations of entrapment. According to Sharp's counsel, Finley was also present at the transaction on October 6, 1982, which constituted Overt Act No. 1 in the conspiracy count of the indictment. Counsel, however, has not sought disclosure of Finley as an eyewitness to the transaction. Thus, whether Sharp may subpoena Finley to appear at trial as an eyewitness to the Octo-

---

**2.** Although there is no fixed rule, disclosure has usually been required when, as in *Roviaro,* the informer was an active participant in the events underlying the defendant's potential criminal liability. *See United States v. Eddings,* 478 F.2d 67 (6th Cir.1973); *United States v. Barnett,* 418 F.2d 309 (6th Cir.1969). On the other hand, disclosure has usually been denied when the informer was not a participant, but was a mere tipster or introducer. *See United States v. Whitley,* 734 F.2d 1129 (6th Cir.1984); *United States v. McManus,* 560 F.2d 747 (6th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978).

ber 6 transaction is not before us, and any government objection thereto may await that event. The issue before us is whether the government's privilege must yield upon assertions of defense counsel, prior to trial, that disclosure would be relevant and helpful to an entrapment defense.

### IV.

The question of disclosure generally has been left in the first instance to the discretion of the trial court. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir.1983). In analyzing this issue, courts have traditionally utilized *in camera* interviews in order to assess the relevance and possible helpfulness of the informant's identity to the defense. This has long been the accepted practice in this circuit, *see United States v. Lloyd*, 400 F.2d 414, 417 (6th Cir.1968), as well as the predominating rule among our sister circuits. *See, e.g., United States v. Ordonez*, 737 F.2d 793, 810 (9th Cir.1984); *Lilla*, 699 F.2d at 105; *United States v. Varella*, 692 F.2d 1352 (11th Cir.1982), *cert. denied*, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983).

In *Lloyd* this court remanded a case in which the trial court refused disclosure so that the court could conduct an *in camera* interview "for the purpose of determining whether disclosure of the informer's identity would have been relevant and helpful to the defendant...." 400 F.2d at 417. A later case, *United States v. Jackson*, 422 F.2d 975, 977 (6th Cir.1970), pointed out that the district court, in utilizing an *in camera* interview, had correctly "employ[ed] the guidelines set out ... in" *Lloyd*. More recently, in *United States v. McManus*, 560 F.2d 747, 751 (6th Cir.1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978), this court noted the use of an *in camera* interview. Thus, the great weight of authority in this circuit and from the other circuits indicates that a preliminary *in camera* interview of the informant is the appropriate procedure before ordering disclosure.

■ Where the defendant claims entrapment, he must adduce some evidence of entrapment before the government is called upon to disclose to the defendant identity of an informant or to disclose whether a potential witness may have given information to the government (unless it may be subject to *Brady* disclosure requirements). *United States v. Paoli*, 603 F.2d at 1037.

> Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure.

*United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir.1979). In effecting a remand of this case for an *in camera* interview, the district court may also determine whether the informant is "an active participant in the criminal activity" or only a "tipster" in determining whether or not to effect disclosure. *Id.* at 75.

■ Here, we find an abuse of discretion in the trial court's ordering disclosure based solely on defense counsel's representations, without conducting an *in camera* interview of the informant, and without first requiring that the defendant adduce some evidence of entrapment. We emphasize that it is ordinarily not even appropriate for the trial court to compel the production of the suspected informant for an *in camera* interview unless the defendant has first borne his burden of producing some evidence supportive of his entrapment defense, and not merely unsworn assertions of his counsel. *See Gonzales, supra; Paoli, supra.*

We accordingly **REVERSE** the dismissal of the indictment, and **REMAND** for further proceedings. On remand, the district court should conduct an *in camera* interview of the informant, while at the same time fashioning appropriate safeguards to protect his identity.