951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfred C. BRYANT, Defendant-Appellant.
 Nos. 90-1831, 90-1836.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1991.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Defendant, Alfred C. Bryant, appeals from district court orders denying his motions (1) to dismiss the charges against him because of pre-indictment delay; (2) to suppress evidence seized during the execution of an allegedly invalid search warrant; and (3) to produce a confidential informant. Under an agreement to plead guilty to possession of cocaine with intent to distribute, income tax evasion, and felon in possession of a firearm, defendant reserved the right to appeal from these rulings. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 2
 Early in September of 1985, an informant working with the Drug Enforcement Administration ("DEA") purchased cocaine from an unknown person at defendant's residence. On September 23, 1985, while under the observation of DEA agent Greg Anderson, the informant purchased cocaine from defendant at another location. Finally, on October 3, 1985, the informant made another purchase of cocaine from defendant, this time at defendant's residence. Using this information, agent Anderson prepared an affidavit and presented it to a magistrate who in turn issued a search warrant for the search of defendant's residence. Executing the warrant, on October 7, 1985, agents seized a pound of cocaine, firearms, and approximately $30,000 in cash. Defendant was arrested and appeared before a federal magistrate that same day. Later that month, at the request of the government, the complaint was dismissed without prejudice, in order to provide the government with additional time to develop evidence. In March 1986, at the request of the United States Attorney, the Internal Revenue Service ("IRS") began an investigation of defendant for tax evasion.
 
 
 3
 Following the IRS investigation, the United States Attorney presented the case to the grand jury, and in October 1988, defendant was indicted on twelve counts including: possession of cocaine with intent to distribute; possession of firearms as a felon; three counts of tax evasion; and seven counts of unlawful use of a social security number. A warrant was issued for defendant's arrest, and he was finally arrested in August of 1989. In October of 1989, the grand jury returned a superceding indictment which added two counts of distribution of cocaine and a new count for the possession of firearms. Defendant filed a motion to dismiss the cocaine distribution and firearms counts due to pre-indictment delay. He also sought to suppress the evidence seized from his residence, and to obtain the identity of the confidential informant. The district court denied all of these motions.
 
 I. Pre-indictment Delay
 
 4
 Defendant was first arrested on cocaine and firearm charges in October 1985, but the complaint against him was dismissed without prejudice that same month. He was not indicted until October 1988 and was not arrested until August 1989. The superceding indictment was returned in October, 1989. Defendant contends that the delay in bringing the indictment caused him substantial prejudice. The trial court concluded that the pre-indictment delay did not result in defendant's being denied due process of law.
 
 
 5
 18 U.S.C. § 3282 sets a time limit on pre-indictment delay by barring prosecution if the defendant is not indicted within five years after an offense has been committed. However, "the statute of limitations does not fully define [defendant's] rights with respect to the events occurring prior to indictment" because the due process clause "would require dismissal of the indictment if it were shown at trial that the pre-indictment delay ... caused substantial prejudice to [defendant's] rights to a fair trial and that delay was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). In order to obtain a dismissal, a mere showing that there was prejudice and delay is not enough; "the due process inquiry must consider the reasons for the delay." United States v. Lovasco, 431 U.S. 783, 790 (1977). The defendant must show both actual prejudice and that the delay was an "intentional device to gain tactical advantage." Marion, 404 U.S. at 324.
 
 
 6
 Defendant asserts that the three-year delay before the indictment and the four-year delay before the superceding indictment prejudiced him in the following ways:
 
 
 7
 a) loss of defense witnesses whose whereabouts are unknown due to changes of addresses;
 
 
 8
 b) diminution of the memories of all witnesses;
 
 
 9
 c) inability to assert an alibi defense due to passage of time;
 
 
 10
 d) loss by fire of the residence searched; and
 
 
 11
 e) death of a defense witness, Cassandra Servant.
 
 
 12
 Defendant's assertions of loss of defense witnesses, diminution of memories, and inability to assert an alibi are the kinds of complaints that are common to any delay and can be said to be within the contemplation of the drafters of the five year period of limitation. They certainly do not demonstrate a prejudice that would warrant our finding a due process deprivation occurred within the limitation period. As the Supreme Court pointed out in Marion:
 
 
 13
 Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.
 
 
 14
 Marion, 404 U.S. at 325-26. In addition, defendant has simply made general assertions but has offered no evidence to demonstrate that these complaints actually have been realized. He has failed to identify witnesses who are unavailable or who have memory loss, and he has failed to disclose how their testimony is essential.
 
 
 15
 Turning to the fire loss, defendant argues that because the residence was destroyed, he cannot prove that the secret closet in which drugs were found does not open in the manner the government asserts. Although he admits the fire occurred after he moved out of the house, he contends that if the house were still in existence, he could present a video showing how the closet opened. This is the kind of pretrial claim of prejudice that is merely speculative. Marion, 404 U.S. at 326. It often happens that, at trial, evidence can be obtained from another source, or the unavailability of certain evidence turns out to have no practical consequence because of the overwhelming weight of the evidence against the accused. Here, photographs of the hidden closet were available and were shown to defendant. He and other individuals who lived in the house could have testified at trial about how the closet opened. In addition, it appears that there was overwhelming evidence of defendant's guilt, and it is likely that the unavailability of evidence concerning how the closet opened would have had a negligible impact upon the outcome of a trial.
 
 
 16
 Defendant also argues that if Cassandra Servant had not died during the delay, she could have testified that someone else kept the drugs at his residence. Defendant failed, however, to offer any evidence to the trial court that Servant actually would have testified or about what her testimony would have included. See United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985). And, since witness Servant died less than one year after the cocaine and firearms were first seized, even if the indictment had been brought only a year after the search was executed, it would have been too late for her to testify.
 
 
 17
 Because defendant has made an insufficient showing of actual prejudice, he fails to satisfy the first requirement under Marion for a dismissal based on pre-indictment delay. By the same token, he is unable to demonstrate that the delay was an intentional device to gain a tactical advantage. He claims that his indictment was delayed because the government needed his testimony in 1986 in a related case. That argument is not persuasive, since if that were the basis for the delay the government could have indicted him in 1986 rather than in 1988 after the IRS investigation was completed. Even if the delay were for the sake of gaining his testimony in the other case, the government would not have obtained a tactical advantage in this case because the government agreed that nothing defendant testified to before the grand jury in the other case could be used against him. There is no reason to believe, on the basis of the record before us, that the delay was occasioned by any reason other than to await completion by the IRS of its tax evasion investigation. Investigative delays comport with ordinary standards of decency and fair play and are distinct from those undertaken "to gain tactical advantage over the accused." United States v. Lovasco, 431 U.S. at 795. Since the purpose of the delay in this case was the IRS investigation, defendant is unable to show that the pre-indictment delay was an intentional device to gain a tactical advantage.
 
 II. Motion to suppress evidence
 
 18
 (a) Absence of nexus between the drugs and his residence.
 
 
 19
 Defendant asserts that there was no probable cause for issuing a search warrant because the affiant did not offer evidence that drugs would be present at his residence on the day of the search.
 
 
 20
 The affidavit stated that defendant sold cocaine from his home only three days before the warrant was issued, and that the confidential informant had also purchased cocaine at defendant's residence on one prior occasion. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause...." Illinois v. Gates, 462 U.S. 213, 239 (1983). The magistrate has probable cause to issue a warrant to search a place when "there is a fair probability that contraband or evidence of a crime will be found in [that] particular place. Id. at 238. The magistrate's decision to issue a warrant should be based on the "totality of the circumstances" in order to come to a "practical, common sense decision." Id. If "the magistrate had a substantial basis for concluding that [the] search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id. The affidavit, in the instant case, which established that drugs were being distributed from defendant's residence, did provide the magistrate with a substantial basis for finding probable cause to believe that drugs would be at defendant's residence.
 
 
 21
 (b) Material misstatements in the affidavit.
 
 
 22
 Defendant also contends that the search warrant affidavit contained omissions that were the equivalent of false statements. He points out that although the affidavit mentioned that the first cocaine purchase was made for the purpose of buying a controlled substance from him, it failed to mention that though the purchase was made at his house, he was not present. In addition, he argues, the affidavit failed to state that the sale he made to the confidential informant, on September 23, 1985, was not made at his residence. Defendant asserts that an observation made by the district court, is proof that the court relied on these misstatements: "there were three buys of cocaine from defendant's residence within three weeks of the execution of the search warrant." He argues that these omissions were so egregious that they amounted to false misstatements, as opposed to mere omissions.
 
 
 23
 The Supreme Court addressed false representations in search warrant affidavits in Franks v. Delaware, 438 U.S. 154, 155-56 (1978).
 
 
 24
 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held....
 
 
 25
 Franks, 438 U.S. at 155-56. We have observed that:
 
 
 26
 In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided....
 
 
 27
 United States v. Cummins, 912 F.2d 98, 100 (6th Cir.1990) ( citing to Franks, 438 U.S. at 155-56).
 
 
 28
 A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden.... He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof.
 
 
 29
 United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990) (citation omitted).
 
 
 30
 Defendant has not demonstrated any omissions in the affidavit that are the equivalent of false statements made knowingly and intentionally, or with reckless disregard for the truth. The statement made by the district court does not indicate that the judge was lead to believe that defendant was present on the first occasion; it says sales were made from the residence, not by defendant. And since the affidavit does not include language that would lead one to believe that the second sale took place at the residence, the most that can be said is that the district judge misunderstood, rather than was mislead. Finally, if the affidavit were amended to include the information defendant says was omitted, it would nevertheless still be sufficient to support a finding of probable cause since it would inform the magistrate that two sales of cocaine occurred at appellant's residence.
 
 IV. Disclosure of confidential informant
 
 31
 Defendant next contends that the court committed reversible error by denying his motion to produce the confidential informant who was an active participant in the drug transactions. Before the trial court, he argued that he had the right to interview the informant in order that he might prepare for trial and call him as a witness if necessary.
 
 
 32
 The government enjoys the privilege of withholding the identity of informers who provide it information regarding violations of law. Roviaro v. United States, 353 U.S. 53, 59 (1957). The privilege is intended to further and protect the public's interest in effective law enforcement. It recognizes the obligation of citizens to communicate information about the commission of crime, and encourages that obligation by preserving anonymity. The privilege tends to keep open the government's channels of communication by shielding the identity of an informer from those who would have cause to resent his conduct. In the Matter of Grand Jury Investigation, 922 F.2d 1266, 1270 (6th Cir.1991). The privilege is especially crucial in cases involving trafficking in narcotics. United States v. Lloyd, 400 F.2d 414, 415 (6th Cir.1968). The privilege is not absolute, however, and must give way when fundamental fairness dictates that the informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro, 353 U.S. at 60-61. Whether that limitation will apply to the privilege requires a case-by-case determination.
 
 
 33
 We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 34
 Id. at 62.
 
 
 35
 In this case the district court, citing Roviaro, conducted a balancing of factors, and concluded that defendant had not demonstrated how the informant's identity was so essential to his defense that his right to prepare that defense should outweigh the public's interest in protecting the flow of information.
 
 
 36
 We are unable to say the district court erred either in its assessment of defendant's position or in balancing the interests involved. Although defendant pointed to circumstances that indicated that the informant actively participated in the drug transactions, he could not point to any evidence that the informant could support his defense. He did no more than indicate a desire to interview the informant in order to determine if he could be helpful to his defense. Mere speculation about the possible usefulness of an informant furnishes a court with nothing to balance against maintenance of the privilege.
 
 
 37
 In balance, the circumstances of this case favor non-disclosure. The crime with which defendant was charged involves the sale of cocaine. Since there is usually no complaining witness in such a crime, it is especially important to protect the informants upon whom the government must rely. Lloyd, 400 F.2d at 415. The district court was unable to determine if the informant was likely to have information relevant and helpful to defendant's defense, since he failed to posit his theory of defense. In his motion complaining of pre-indictment delay, he mentioned a possible alibi defense. If that were to be his defense, then it would seem that the informant would be of no assistance, since any testimony from him that defendant made the sales would contradict defendant's being elsewhere. Without knowing more about defendant's theory of defense, we are unable to adequately assess "the possible significance of the informer's testimony" as suggested by Roviaro.
 
 
 38
 Although the informant's role as an active participant, as opposed to a mere tipster, is a factor relevant to Roviaro balancing, under the circumstances of this case it adds no real weight to the balance, since defendant has not demonstrated how that is significant to his defense, from an evidentiary point of view. To say that role should tip the balance under the circumstances of this case would be to assign to it the preclusive effect of a per se rule. This we are unwilling to do, in view of the previous case law of this circuit.
 
 
 39
 In United States v. Sharp, 778 F.2d 1182 (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986), the defendant, who was charged with the distribution of heroin, sought disclosure of the identity of an informant. According to an extensive representation of the circumstances surrounding the criminal activity with which defendant was charged, made by defense counsel at a pretrial hearing, the informant was an active participant and could assist in defendant's defense of entrapment. No in camera interview was held with the confidential informant. Convinced by defense counsel's offer of proof, that disclosure was both relevant and helpful to the defense and essential to a fair determination of the issues in the case, the court ordered production of the informant. We reversed, saying:
 
 
 40
 [W]e find an abuse of discretion in the trial court's ordering disclosure based solely on defense counsel's representations, without conducting an in camera interview of the informant, and without first requiring that the defendant adduce some evidence of entrapment. We emphasize that it is ordinarily not even appropriate for the trial court to compel the production of the suspected informant for an in camera interview unless the defendant has first borne his burden of producing some evidence supportive of his entrapment defense, and not merely unsworn assertions of his counsel.
 
 
 41
 Sharp, 778 F.2d at 1187.
 
 
 42
 Because defendant had not borne his burden of producing some evidence supportive of a defense, the district court properly declined disclosure.
 
 
 43
 For the foregoing reasons, the orders of the district court are affirmed.
 
 
 44
 NATHANIEL R. JONES, concurring.
 
 
 45
 I fully agree with the majority that the delay in bringing the superceding indictment did not prejudice Bryant and that the challenged search warrant was valid. I also agree that Bryant failed to explain how the informant's identity or testimony might have been relevant to the pleaded charges of possession with intent to distribute cocaine (count one), attempted tax evasion (count four), and possession of a firearm by a felon (count fifteen). I write separately merely to emphasize that, had Bryant been convicted of counts thirteen and fourteen, predicated on alleged drug sales to the informant, the district court would have been required to conduct an in camera interview of the informant before upholding the government's confidentiality request.
 
 
 46
 Assertion of the privilege to withhold the identity of a confidential informant is more than a mere formality. Indeed, the privilege often stands in direct opposition to, and is circumscribed by, a defendant's Sixth Amendment right to confront witnesses against him, and as such should be upheld in only the most compelling of circumstances. As the Supreme Court cautioned in Roviaro v. United States, 353 U.S. 53, 60-61 (1957),
 
 
 47
 [a] limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
 
 
 48
 (footnote omitted). The informer's privilege threatens not only the defendant's right to confront his accusers, but also the public's equally vital interest in an open and fair resolution of a criminal charge in a court of law. Thus, we have recognized that "the informer's privilege is not to be expansively construed to excuse an individual's testimonial obligation because such privileges create an inherent tension with society's legitimate interest in complete disclosure of the truth." In re Grand Jury Investigation, 922 F.2d 1266, 1270 (6th Cir.1991).
 
 
 49
 In order to ensure proper regard for the interests invariably at odds with the privilege, this court often requires that district courts conduct in camera interviews of informants before ruling on the government's assertion of the privilege. Thus, in United States v. Sharp, 778 F.2d 1182 (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986), in reversing the trial court's decision to compel disclosure of a confidential informant's identity, we remanded with instructions that the informant be interviewed in camera before the district court ruled on the issue. We justified our holding by noting that
 
 
 50
 courts have traditionally utilized in camera interviews in order to assess the relevance and possible helpfulness of the informant's identity to the defense. This has long been the accepted practice in this circuit, as well as the predominating rule among our sister circuits.
 
 
 51
 ....................................................
 
 
 52
 ............................
 
 
 53
 * * *
 
 
 54
 Thus, the great weight of authority in this circuit and from the other circuits indicates that a preliminary in camera interview of the informant is the appropriate procedure before ordering disclosure.
 
 
 55
 Id. at 1187 (citations omitted).
 
 
 56
 We have also joined our sister circuits in recognizing that the informer's role in the underlying criminal activity normally will play a significant if not determinative role in deciding whether an in camera interview is required. Where the informant was an actual participant in the crime charged, as opposed to a mere observer or "tipster," the balance weighs heavily in favor of disclosure. As the Fourth Circuit has held, "where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a potential witness. In such instances disclosure of identity should be required." McLawhorn v. North Carolina, 484 F.2d 1, 5 (4th Cir.1973); cf. Sharp, 778 F.2d at 1186 n. 2 ("[D]isclosure has usually been required when ... the informer was an active participant in the events underlying the defendant's potential criminal liability.").
 
 
 57
 Count one of the indictment, to which Bryant pled guilty, was predicated on evidence seized pursuant to a valid search warrant. Bryant fails to indicate how the government's refusal to produce the informant prejudiced his case on this count. Bryant does not even allege that nondisclosure of the informant was prejudicial to his plea to attempted tax evasion (count four) or possession of a firearm (count fifteen). Count thirteen of the superseding indictment, however, alleged a cocaine sale on September 23, 1985, and count fourteen alleged a sale on October 3, 1985, both between Bryant and the government's confidential informant. The informant, far from being a mere observer of these transactions, actively participated in and in fact solicited the sales. Where an informant assumes so active a role in the criminal activity, it is incumbent upon the government to produce him, at a minimum for in camera interview, so that the district court may make a meaningful determination that the defendant's inability to confront the informant does not prejudice his case. Any other result would, in my view, contradict the teaching of Roviaro and Sharp. However, in light of the fact that Bryant neither pled guilty to nor was convicted of counts thirteen and fourteen, I do not believe nondisclosure of the informant's identity prejudiced his Sixth Amendment rights. Accordingly, I concur in the majority's opinion.