NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0846n.06

No. 12-1780

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 26, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE EASTERN DISTRICT |
| v. | ) | OF MICHIGAN |
| | ) | |
| CROMWELL BOST, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE:  BOGGS and DONALD, Circuit Judges, and STAMP, District Judge.[*]

**Frederick P. Stamp, Jr., Senior District Judge.**  A jury convicted defendant-appellant Cromwell Bost ("Bost") on five separate charges.  These charges included three counts of distribution of a controlled substance and one count of possession with intent to distribute a controlled substance, all in violation of 21 U.S.C. § 841(a)(1).  The jury also convicted the defendant of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Bost appeals, arguing that: (1) he was entitled to a finding of entrapment as a matter of law; (2) the government and district court unconstitutionally interfered with Bost's ability to present a defense by denying him access to a confidential informant; and (3) his sentence was substantively unreasonable due to the district court denying Bost a downward departure based on his mental health issues.  For the reasons stated below, we affirm the defendant's conviction and sentence.

---

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

## I. Background

In October 2009, a confidential informant ("informant") notified Bureau of Alcohol, Tobacco, and Firearms Agent Deon Hogan ("Agent Hogan") that Bost was in possession of crack cocaine and a firearm. Agent Hogan then created the undercover identity of "J.D. the landscaper" and provided the informant with a fictitious job application for his landscaping company, which the informant was to give to Bost. Bost filled out the application and returned it to the informant, who then gave it to Agent Hogan. The informant allegedly told Bost that J.D. would hire him for snow removal if Bost would sell him crack cocaine.

In June 2010, Agent Hogan started contacting Bost through the cellular phone number Bost provided on the job application. Agent Hogan sought to purchase drugs from Bost during the communications. The first sale took place on June 3, 2010. This was the only sale where the informant was present. No charges were brought against the defendant based on this sale. Then, on June 9, 2010 and again on June 10, 2010, Bost sold Agent Hogan crack cocaine without the informant present. During the June 10, 2010 purchase, Bost indicated he also had heroin available for purchase.

For the next few months, Bost and Agent Hogan were not in frequent contact. On October 26, 2010, however, Agent Hogan called Bost to purchase a gun, crack cocaine, and heroin. During the phone call, they discussed the price of the drugs and the gun. When Agent Hogan contested the price of the drugs, Bost defended his price by stating that he dealt "more with quality than quantity." (Call Tr. 10/26/10 *7.) Bost also stated that he could not price himself out of business and that he had been "in business for 7 years." *Id.* In further defense of his prices, Bost informed Agent Hogan

2

that Agent Hogan could "cut it and weaken it down" once he bought it to make the two grams of the drug into four grams. *Id.* at *4. Near the end of the call, when discussing when to meet to make the purchase, Bost told Agent Hogan that Agent Hogan could "come through now" if he wanted to, indicating that Bost had the items ready for purchase. *Id.* at *9. Agent Hogan, however, told Bost that he was unable to meet with him until another day.

On the day of the purchase, Bost and Agent Hogan spoke on the phone three times. They discussed the price of the drugs and aspects of the gun that Agent Hogan was to purchase from Bost. When the purchase took place, Bost did not have the gun for Agent Hogan to purchase, but he did have the drugs and his own personal gun. Agent Hogan offered to purchase this gun, but Bost repeatedly refused. During the purchase, Bost explained exactly how to cut and weaken the heroin to make a gram of the drug into two grams. Bost also told Agent Hogan to call him the next day so he could show him the gun they were discussing.

In February 2011, Agent Hogan again contacted Bost to purchase drugs. During the first phone call about the meeting, Bost said that there was a shortage of crack cocaine that could affect the price of the drug. During the next two phone calls setting up the meeting, Bost and Agent Hogan discussed the price and the quantity of the drugs that Agent Hogan was interested in purchasing. On the date of the meeting, the police planned to arrest Bost. After a short foot chase, Bost was eventually arrested. The police found a gun, crack cocaine, and heroin in Bost's car. After a search of his person, the police located a small digital scale and additional crack cocaine and heroin in Bost's pockets.

Seven charges were brought against Bost: three counts of distribution of a controlled substance, one count of possession with intent to distribute a controlled substance, one count of being a felon in possession of a firearm, and two counts of possessing a firearm in furtherance of a drug trafficking crime. At trial on these charges, Bost attempted to establish the defense of entrapment. Bost testified that the informant told him that, in exchange for selling crack cocaine to Agent Hogan, Agent Hogan would provide Bost with a snow removal job at the fictitious landscaping business. Bost also testified that he had bought a snow blower in preparation for working in the snow removal business. Bost further stated that he was not selling drugs before he was approached by Agent Hogan, and that he did not sell drugs to anyone other than Agent Hogan.

Bost moved for the production of the informant three separate times during the litigation. Bost first moved for production during a pretrial hearing. The district court denied this motion because it found that Bost had not produced sufficient evidence to show how the informant would assist in Bost's defense. Bost then moved for the production of the informant after the close of the government's case and again at the close of his own case. The district court denied both motions. Therefore, the informant was not produced and did not testify at Bost's trial.

The jury convicted Bost on five of the seven charges. Specifically, the jury convicted him of three counts of distribution of a controlled substance, one count of possession with intent to distribute a controlled substance, and one count of being a felon in possession of a firearm. At sentencing, Bost argued for a downward departure based on mental health issues, which included Bost being diagnosed with paranoid schizophrenia. The district court found that the mental health issues did not rise to the level of supporting such departure from the advisory guidelines. Thus,

4

based on Bost's criminal history and his conviction, the district court stated that the applicable

advisory guideline range was 210 months to 262 months of imprisonment. After considering the

sentencing guidelines and factors set out in 18 U.S.C. § 3553(a) as well as other factors in the record,

the district court imposed a sentence of 210 months of imprisonment with three years of supervised

release to follow. The district court, however, recommended that Bost be initially placed at a facility

that could offer mental health screening, evaluation, and training. The district court informed Bost

that he had the right to appeal not only his conviction, but also his sentence. Thereafter, Bost did

file a timely appeal as to both his conviction and sentence.

## II. Analysis

### A. Entrapment as a Matter of Law

Bost first challenges the district court's determination that he was not entitled to a finding

of entrapment as a matter of law. When a defendant challenges the district court's refusal to enter

a directed verdict for acquittal based on the defense of entrapment, this Circuit construes such a

challenge "as an attack on the sufficiency of the evidence." *United States v. Cope*, 312 F.3d 757,

778 (6th Cir. 2002).

Two elements are necessary to establish an entrapment defense: "(1) government inducement

of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal

activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002) (citing *United States v. Nelson*,

922 F.2d 311, 317 (6th Cir. 1990), *cert. denied*, 499 U.S. 981, 111 S.Ct. 1635, 113 L.Ed.2d 731

(1991)). "If a defendant raises the entrapment defense, the government bears the burden of proving

predisposition beyond a reasonable doubt." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir.

1984). The question of whether such defense is established, however, "is generally an issue for the jury, not the court." *United States v. Ng*, 26 F. App'x 452, 459 (6th Cir. 2001) (citing *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991)); *see also United States v. Cummins*, 969 F.2d 223, 228 (6th Cir. 1992) ("Generally, an entrapment defense presents a jury question.").

In order for a defendant to establish that he is entitled to a finding of entrapment as a matter of law, "the testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a 'patently clear' absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide." *Pennell*, 737 F.2d at 534 (citations omitted). Further, before we can overturn a jury's finding that the defendant was not entrapped, we "must conclude that no reasonable juror could have concluded beyond a reasonable doubt that the defendant was predisposed" to commit the offenses. *United States v. Jennings*, 945 F.2d 129, 133 (6th Cir. 1991).

Bost argues that the government failed to prove that he was predisposed to commit the charged offenses. Specifically, he argues that the government originally suggested the criminal activity to him and overcame his reluctance through repeated advances and unconscionably powerful incentives. This Circuit has enumerated five factors that are relevant in determining predisposition:

[1]    the character or reputation of the defendant, including any prior criminal record;

[2]    whether the suggestion of the criminal activity was initially made by the Government;

[3]    whether the defendant was engaged in the criminal activity for profit;

[4]    whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and

[5]     the nature of the inducement or persuasion supplied by the government.

*Khalil*, 279 F.3d at 365 (quoting *Barger*, 931 F.2d at 366).

Bost argues that at least three of these factors weigh heavily against finding that he was predisposed to commit the charged offenses. First, he argues that the informant was the person to initially suggest the criminal activity. The government does not contest this. However, "it has been held that the fact a government agent . . . attempted to arrange the purchase of narcotics is insufficient to establish entrapment." *Barger*, 931 F.2d at 367. Therefore, based on this fact alone, Bost was not entitled to entrapment as a matter of law.

Second, Bost argues that he evidenced reluctance to sell drugs and guns, which was only overcome after the informant told Bost that Agent Hogan would offer him a snow removal job if Bost sold Agent Hogan drugs. Such evidence of reluctance, however, is weakened by the phone calls and subsequent conversations between Agent Hogan and Bost. While Bost may have been reluctant at first to sell Agent Hogan drugs and guns, he continued to sell him drugs even after Bost "knew [Agent Hogan] was full of it" concerning any job offer. District Ct. ECF No. 37 *662. Further, the phone calls and conversations do not indicate any further reluctance on the part of Bost. Instead, at least one phone call indicates that Bost was ready to sell Agent Hogan drugs immediately, as Bost told Agent Hogan that he could "come through now" to pick up the drugs. (Call Tr. 10/26/10 *9.) Thus, Bost's testimony that he only sold Agent Hogan drugs because he wanted the snow removal job is not enough to establish a "patently clear" absence of predisposition.

Third, Bost argues that the nature of the inducement was powerful, extreme, and morally reprehensible. Bost states that at the time the informant presented the potential job offer to him, the

7

prospect of employment was difficult for many Americans due to the economic recession, especially in Detroit, Michigan where Bost resided. While this may be true, Agent Hogan did not make contact with Bost to purchase drugs until June 2010, eight months after Bost initially filled out the job application and long after any snow removal services were needed in the Detroit area. Moreover, Bost continued to sell Agent Hogan drugs after he "knew [Agent Hogan] was full of it" concerning any job offer. District Ct. ECF No. 37 *662. Therefore, the inducement evidence does not establish a "patently clear" absence of predisposition.

Such a finding is bolstered by other evidence presented at Bost's trial. First, concerning the two remaining factors, Bost did engage in the criminal activity of selling drugs for a profit, and Bost also has a criminal record. Further, during the recorded phone calls and conversations between Bost and Agent Hogan, which were played at trial for the jury, Bost seemed to be familiar with drug terminology and sales. For instance, he referred to what he was doing as a business, stating, "I can't price myself out of business, I've been in business for 7 years, man." (Call Tr. 10/26/10 *7.) Bost also negotiated the prices of the drugs with Agent Hogan. During one call when Bost was discussing the price of the drugs with Agent Hogan, Bost claimed there was a shortage of one of the drugs, which was making it hard to find. Further, he discussed how he "deal[t] more with quality than quantity." *Id.* Based on the evidence taken as a whole, we affirm the district court's determination that Bost was not entitled to a finding of entrapment as a matter of law because the evidence does not demonstrate that there was a "patently clear" absence of predisposition. Thus, the issue was properly presented to the jury.

8

**B.      Disclosure of the Confidential Informant**

**1.       Disclosure under *Rovario***

Bost next challenges the district court's refusal to order the disclosure of the informant or

to require an *in camera* hearing be held concerning the informant.  As to the district court's denial

of the defendant's motion for disclosure of an informant, we review such decisions under an abuse

of discretion standard.  *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993).  "A district court

abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal

standard, or relies upon clearly erroneous findings of fact."  *United States v. Pugh*, 405 F.3d 390, 397

(6th Cir. 2005) (quoting *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir.1997)).  Therefore,

we will reverse the district court's decision only if firmly convinced that a mistake has been made.

*Id.* (citing *United States v. Kingsley*, 241 F.3d 828, 835 n.12 (6th Cir. 2001)).

In *Roviaro v. United States*, the Supreme Court held that the government has a limited

privilege to withhold the identity of confidential informants.  353 U.S. 53, 59-60 (1957).  The

defendant can overcome this privilege where "the disclosure of an informer's identity, or of the

contents of his communication, is relevant and helpful to the defense of an accused, or is essential

to a fair determination of a cause."  *Id.* at 60-61.  It is the defendant's burden "to show how

disclosure of the informant would substantively assist his defense."  *United States v. Moore*, 954

F.2d 379, 381 (6th Cir. 1992).  In determining whether disclosure of an informant is proper, a court

must "balanc[e] the public interest in protecting the flow of information against the individual's right

to prepare his defense." *Roviaro*, 353 U.S. at 62.  The result ultimately "depend[s] on the particular

circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

Bost first argues that the need for producing the informant in presenting an entrapment defense is self-evident. He states that the informant was the only witness to the recruitment process and that it was imperative that Bost be able to examine the informant about the inducements he offered. Bost himself, however, testified regarding the inducements offered. He stated that the informant told him that if Bost sold Agent Hogan drugs, Agent Hogan would provide Bost with a snow removal job. Further, Agent Hogan testified concerning the creation of the job application that the informant provided to Bost. Other than the snow removal position, Bost never alleged there were any further inducements offered by the informant, and the government did not contest the issue of whether Bost was offered a job in return for selling Agent Hogan drugs. Ultimately, we find that Bost did not establish how the informant testifying to the same facts would have assisted him in establishing an entrapment defense.

We also note that Bost knew the identity of the informant, at least by his "street name." District Ct. ECF No. 37 *640; District Ct. ECF No. 32 *131-32. In fact, it appears that the informant was Bost's next-door neighbor. District Ct. ECF No. 37 *640. Thus, if Bost had wished to interview the informant prior to trial or subpoena the informant to testify, it seems that Bost would have known how to contact the informant without the assistance of the government.[2] Based on this

---

[2]At oral argument, appellant's counsel indicated that the defense did attempt to locate the informant but the attempt was unsuccessful. No other evidence exists in the record to support this claim.

information, together with Bost's failure to establish how the informant would assist him in establishing his entrapment defense, we hold that the district court did not abuse its discretion in denying Bost's motion for disclosure of the informant.

Bost next argues that the district court abused its discretion when it failed to conduct an *in camera* interview with the informant before denying Bost's motion for disclosure. Generally, a district court's denial of a request to hold an *in camera* hearing is reviewed for an abuse of discretion. *United States v. Hudson*, 325 F. App'x 423, 426 (6th Cir. 2009). In this case, however, the defendant never made such a request nor did he object when the district court did not hold such hearing. Therefore, we review the district court's actions in this instance only for plain error. *See United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) ("When an appellant fails to object to an error in the district court, this Court reviews for plain error.").

District courts "have traditionally utilized *in camera* interviews in order to assess the relevance and possible helpfulness of the informant's identity to the defense." *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985). However, "it is ordinarily not even appropriate for the trial court to compel the production of the suspected informant for an *in camera* interview unless the defendant has first borne his burden of producing some evidence supportive of his entrapment defense, and not merely unsworn assertions of his counsel." *Id.*

Here, Bost argues that his own testimony provided some evidence of entrapment beyond the assertions of his counsel. Specifically, he states that his testimony concerning the informant's continuing requests for guns and drugs from Bost provided evidence of entrapment. After Bost's testimony, Bost's counsel renewed his motion for disclosure of the informant. Bost's counsel argued

11

that based on Bost's testimony, there seemed to be a dispute between the government's and the defendant's version of the events. Therefore, he once again requested that the informant be disclosed. The district court, however, found that there was no dispute about what role the informant played. While there may have been some evidence of entrapment based on Bost's testimony, such evidence was not enough to require that the district court hold an *in camera* hearing regarding the informant's disclosure.

Further, we note that during a pretrial hearing when Bost's counsel made the first motion for disclosure of the informant, the district court listened to a recording of the first uncharged transaction, in which the informant took part. After hearing the recording, the district court found that nothing in it indicated that Bost's "will had to be overborn" by the informant before Bost agreed to take part in the offense. District Ct. ECF No 41 *856. After hearing this recording and the testimony from all witnesses involved in the case, the district court made the informed choice, without holding an *in camera* hearing, not to require disclosure of the informant. We find that based on the record, the district court did not commit plain error by not conducting an *in camera* hearing regarding the production of the informant, as nothing in the record indicates how the disclosure of the informant could substantively assist in establishing Bost's entrapment defense. As the district court stated, it is clear what role the informant played regarding Bost's inducement and the record does not indicate how the informant would have substantively assisted further in Bost's entrapment defense.

## 2. Disclosure under *Brady*

Bost also argues that as to the disclosure of the informant, the prosecution violated its *Brady* obligations by refusing to make the informant available to Bost. We generally review a district court's determination regarding *Brady* evidence *de novo*. *United States v. Crayton*, 357 F.3d 560, 568-69 (6th Cir. 2004). In this instance, however, Bost's counsel did not raise the question of a possible *Brady* violation. Accordingly, we review "at most for plain error."[3] *Id.* at 569. In *Brady v. Maryland*, the Supreme Court held that the suppression of evidence by the prosecution "violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). This rule applies to both impeachment evidence and exculpatory evidence. *Bell v. Bell*, 512 F.3d 223, 232 (6th Cir. 2008) (citing *United States v. Bagley*, 473 U.S. 667, 676-77 (1985)). In order to establish a *Brady* violation, the defendant must show: "(1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Id.* at 231 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

In order to establish prejudice, the defendant must show that the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to

---

[3]The Sixth Circuit has also stated that because a defendant "did not raise the issue of a possible *Brady* violation in the district court, '[i]t could also be said that defendant waived his *Brady* claim, such that even plain error review is not required.'" *United States v. Shaliwal*, 464 F. App'x 498, 504 (6th Cir. 2012) (quoting *Crayton*, 357 F.3d at 569).

undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A *Brady* violation, however, does not occur "if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (citations omitted).

Bost argues that the prosecution wrongfully denied him access to the informant, which hindered Bost's defense. Bost claims that the informant was the only person with information about the conversations Bost had with the informant that could refute or color the testimony offered by Agent Hogan. Therefore, Bost claims that the non-disclosure of the informant led to the suppression of favorable information and, thus, established a *Brady* violation.

We find, however, that the district court did not commit plain error, as no *Brady* violation occurred concerning the disclosure of the informant. First, Bost has failed to show that he was prejudiced by the non-disclosure of the informant. As mentioned previously, the evidence of the informant's inducement was presented to the jury without the testimony of the informant, and Bost further testified to the informant's frequent requests for drugs and guns. The informant not testifying to these same subjects does not undermine confidence in the jury's verdict. Second, the information regarding the inducements and frequent requests was available to Bost from another source himself. Bost was obviously present for the conversations and the inducements that he claims are favorable to his defense. Accordingly, we find that a *Brady* violation did not occur.

**C.      Downward Departure**

Bost's final argument on appeal concerns the substantive reasonableness of the sentence imposed by the district court. We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). The appellate court's role "is not to usurp the sentencing judge's position as the best interpreter of the facts." *United States v. Aleo*, 681 F.3d 290, 300 (6th Cir. 2012). Unlike an appellate court, the district court has observed the defendant and witnesses firsthand. "If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Gall* 552 U.S. at 51 (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)).

We may review the reasonableness of a sentence in terms of its procedural reasonableness or its substantive reasonableness. Here, Bost appeals only the substantive reasonableness of his sentence and, thus, we need not address his sentence in terms of its procedural reasonableness. A sentence may be substantively unreasonable if when imposing the sentence, the sentencing court "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors, or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (footnotes omitted).

Bost argues that his sentence was substantively unreasonable because it did not properly reflect his mental impairment. Bost states that his mental illness of paranoid schizophrenia is severe, continuing, and requires ongoing professional attention and medication. He claims that his sentence fails to properly reflect his impairment, which undermines the purpose of the sentencing guidelines and statutes, and is disproportionate to his culpability. Specifically, Bost believes that it undermines

15

the sentencing factor that advises the district court to consider whether a sentence "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

During the sentencing hearing, the district court openly recognized that Bost has "some mental health issues." District Ct. ECF No. 40 *833. The district court, however, found that the issues did not "rise to the level of supporting a downward departure or deviation for his mental health condition." *Id.* In support of this finding, the district court then discussed the letters that Bost sent to chambers. Reading these letters, the district court found that Bost was "very logical in his progression and his thinking and his reasoning." *Id.* Further, when the court imposed the sentence, it indicated that it arrived at the 210 month sentence "after considering the sentencing guidelines, and the factors in the sentencing statute" as well as other factors in the record. *Id.* at *846. The sentence included the recommendation that Bost be placed initially at a facility that could offer mental health screening, evaluation, and training. In making this recommendation, the district court indicated that with proper evaluation and treatment, Bost would "be better able to cope with life when he returns to the community after completing his sentence." *Id.* at *846.

First, we note that Bost's 210 month sentence was at the bottom of the applicable guideline range. As Bost's sentence was within the applicable guideline range, we apply a presumption of reasonableness. Bost cannot overcome this presumption. There is nothing to suggest that the district court selected the sentence arbitrarily, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor. Based on the transcript of the sentencing hearing, the district court more than adequately addressed Bost's

mental impairment.   It expressly provided its reasoning as to why it was not granting a variance or downward departure based on such impairment.  Nothing about this discussion indicated that the district court selected Bost's sentence arbitrarily.   Instead, the sentence seems well reasoned, especially considering the district court's recommendation that Bost initially be placed in a facility where he could obtain screening, evaluation, and training concerning his mental health impairment. Further, the court indicated that it considered all of the § 3553(a) factors, and there is no indication that it took into account impermissible factors.

Bost's argument that his sentence was disproportionate to his culpability due to his mental illness is unfounded, and such argument does not render the district court's sentence substantively unreasonable.  As stated above, the district court imposed a sentence of 210 months, which was at the lowest end of the guideline range.  The guideline range was based not only on the offenses that the jury convicted Bost of, but also on Bost's extensive criminal history, which placed him in a criminal history category of VI the highest possible category.  While Bost may believe that his sentence is disproportionate to his culpability, there is no case law to suggest that a district court's decision to not grant a downward departure or variance based on a defendant's mental illness is substantively unreasonable.  It is not contested that Bost does have a mental impairment.  Nothing in the record, however, indicates that the district court selected Bost's sentence arbitrarily or took any other action that renders Bost's sentence substantively unreasonable.  Thus, we find the district court did not abuse its discretion when it imposed Bost's sentence.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the defendant's conviction and sentence.