**UNITED STATES of America, Plaintiff,**

v.

**Dion Eric SAVAGE, Eric Lyzell Simpson, Defendants.**

**Criminal No. 95–50061–01.**

United States District Court,
E.D. Michigan,
Southern Division.

June 20, 1997.

James C. Howarth, Juan A. Mateo, Jr., Detroit, MI, for Dion Eric Savage.

Gerald K. Evelyn, Detroit, MI, Federal Defender, Federal Defender Office, Detroit, MI, for Eric Lyzell Simpson.

Federal Defender, Federal Defender Office, Flint, MI, for Mark Anderson.

## OPINION AND ORDER REGARDING GOVERNMENT'S REQUEST FOR AN IN CAMERA HEARING

GADOLA, District Judge.

On January 24, 1996, defendant Eric Lyzell Simpson filed a motion to produce the confidential informant who allegedly made a controlled purchase of narcotics from Simpson's residence on November 1, 1995. Defendant Dion Eric Savage joined in that motion on February 13, 1996, and also requested production of ALL other informants in this case. Defendants believe that disclosure is required so that the informants can be interviewed.

In an opinion and order dated July 12, 1996, this court denied defendants' motions to produce informants. In so doing, this court "warned" the government that if it did not intend to call various informants as witnesses at trial, but did intend to introduce evidence regarding the transactions in which the informants participated, in that circumstance it would have to disclose the informants to the defense, or in the alternative, request an *in camera* hearing so that this court could determine whether the informants' testimony would possibly aid the defense.

On May 7, 1997, the government filed a motion for an *in camera* hearing. In that motion, the: government revealed that it did not intend to call as witnesses the informants who participated in controlled purchases, but did intend to introduce evidence of three controlled purchases at trial. Specifically, the government apprised this court of its intent on introducing evidence of a May 31, 1994 controlled purchase at Dion's Mini–Mart II, 820 Welch Blvd., Flint, Michigan, a December 14, 1995 controlled purchase at the residence of Martez Coleman, 718 E. Carpenter, Apt. # 20, Flint, Michigan, and a May 7, 1997 controlled purchase at Dion's Party Store, 6101 N. Saginaw Street, Flint, Michigan.[1]

On June 9, 1997, the government informed this court and the defense that it had changed its position and did *not* intend on introducing evidence of the three aforemen-

---

1. Note, that the November 1, 1995 controlled purchase from Simpson's residence is not listed.

tioned controlled purchases at trial, therefore obviating the need for an *in camera* hearing. The government did, however, reserve its right to introduce evidence of these alleged controlled buys at trial if the government deemed it necessary to do so based upon the manner in which the trial unfolded. The purpose of this opinion and order is to clarify the procedure that this court will follow in conducting the *in camera* hearing in the event that the government finds it necessary to introduce evidence of the alleged controlled buys at trial without calling the informants who participated in them as witnesses.

### The Purpose of The In Camera Hearing

In *Roviaro v. United States,* 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957), the Supreme Court recognized a governmental privilege to refrain from disclosing the identity of informants. The policy behind that privilege (a.k.a. the "informer's privilege") is to encourage citizens to communicate their knowledge regarding commission of crimes to law enforcement officials; citizens are more likely to come forward with information if their anonymity is preserved. *United States v. Lloyd,* 400 F.2d 414, 415 (6th Cir.1968). "The privilege of the government to withhold the identity of informers is especially important in the enforcement of narcotics laws. In the illegal sale of narcotics there is usually no complaining witness. The transaction is always consensual . . . [t]he government must of necessity rely on informers, and an informer is effective only so long as his identity is not known." *Id.*

■ The informer's privilege is not absolute. "When on the facts of the individual case the 'fundamental requirements of fairness' indicate that the informer's identity would be 'relevant and helpful to the defense of the accused, or essential to a fair determi-

nation of a cause, the privilege must give way.'" *United States v. Barnett,* 418 F.2d 309, 311 (1969) (*citing Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28). The Supreme Court in *Roviaro* articulated a balancing test to be employed in determining whether the privilege must give way:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for *balancing* the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628 (emphasis added). *See United States v. Martinez,* 979 F.2d 1424, 1428 ("The scales are tipped toward disclosure only when the combination of circumstances, including the charge, the possible defenses, the significance of the informant's testimony, and other relevant factors, dictates disclosure over secrecy."); *United States v. Ordonez,* 737 F.2d 793 (9th Cir.1983) (remanding case for court to conduct *in camera* proceedings and requiring the lower court to make a complete record as to their balancing).[2]

■ It is now well-settled that an *in camera* hearing provides a suitable method for the balancing required by *Roviaro. See United States v. Rawlinson,* 487 F.2d 5, 7, n. 2 (9th Cir.1973) (court "believe[d] that in most situations an *in camera* hearing provides a salutary means by which to satisfy the balancing of interests required by *Roviaro*" and recognized that *in camera* procedure

---

2. This case presents a much less compelling case for disclosure than *Roviaro,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro,* the defendant was charged with selling heroin and fraudulently and knowingly, receiving, concealing, buying and facilitating the transportation and concealment after importation of heroin, knowing the same to be imported into the United States, contrary to law. Both charges arose out of *one* incident, and only one incident, which allegedly occurred on August 12, 1954, in which

the defendant sold drugs under a controlled setting to "John Doe." Aside from the defendant, John Doe was the "sole participant" in the transaction charged and indeed, "the only witness in a position to amplify or contradict the testimony of government witnesses" as to the incident in question. *Id.* at 64, 77 S.Ct. at 630. In the instant case, the indictment is not based *solely* (if at all) upon the three controlled purchases which the government intends on introducing at trial.

was approved in a number of other circuits, including the Eighth, Sixth, and Third Circuits), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1579, 39 L.Ed.2d 881 (1974); *Lloyd,* 400 F.2d at 415 (court suggested the use of an *in camera* hearing to determine if identity of informant's testimony had to be disclosed). The overarching purpose of such a hearing is to determine if the informant's testimony is "material" to the defense. Only if the informant's testimony is "material," must his or her identity be disclosed. Courts primarily look at three factors in assessing the materiality of an informant's testimony, including: (1) the level of the informant's involvement; (2) the helpfulness of the disclosure and (3) the government's interest in non-disclosure. *United States v. Singh,* 922 F.2d 1169 1172 (5th Cir.), *cert. denied,* 502 U.S. 893, 112 S.Ct. 260, 116 L.Ed.2d 214 (1991) (formulating the three-factor balancing test); *United States v. De La Rosa–Contreras,* 859 F.Supp. 388, 390–91 (D.Ariz.1994) (court determined that an *in camera* hearing was necessary to decide defendant's motion to disclose identity of informant; in assessing whether disclosure was warranted, court would apply three-factor balancing test). *Cf. United States v. Straughter,* 950 F.2d 1223, 1232 (6th Cir. 1991) (holding that danger to informant's life must be given significant weight in striking the *Roviaro* balance and holding that that balance tips in favor of nondisclosure when informant cannot aid defense).

### What Procedure Should Be Employed? Should Defense Counsel Be Allowed to Be Present At the Hearing to Cross-examine the Informant?

Courts are afforded wide-latitude in conducting an *in camera* hearing of this type, and in fact, courts conduct such hearings in a variety of ways. *United States v. Ordonez,* 737 F.2d 793, 809–10 (9th Cir.1983) (remanding the case to the lower court for an *in camera* hearing and allowing the court dis-

cretion in conducting that *in camera* hearing; court could permit defense counsel to be present or could merely allow defense counsel to submit questions). First, some courts ·conduct the *in camera* hearing outside the presence of the U.S. Attorney, the defendant and the defense attorney. *See e.g., United States v. Grisham,* 748 F.2d 460, 464, n. 2 (8th Cir.1984); *United States v. Ward,* 703 F.2d 1058, 1062 (8th Cir.1983); *United States v. De La Rosa–Contreras,* 859 F.Supp. 388, 392 (D.Ariz.1994)[3]; *United States v. Strange,* 52 F.R.D. 542 (E.D.Tenn.1970). Typically, when this procedure is followed, the court allows the defense an opportunity to submit questions to be asked by the judge at the hearing. *United States v. Jenkins,* 4 F.3d 1338, 1340 (6th Cir.1992), *cert. denied,* 511 U.S. 1034, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994) (court held *in camera* hearing in which only the confidential informant and government agent were present; court allowed defendant to submit questions to be asked at hearing; judge read questions to informant during hearing and took notes as to informant's answers; judge then read defendant's questions and informant's answers into the record and allowed defendant to use informant's answers at trial); *United States v. Gonzalo Beltran,* 915 F.2d 487, 489 (9th Cir.1989) (court held *in camera* hearing in which judge asked informant questions of its own, as well as questions submitted by defense counsel; court also had before it at the hearing, the evidence proffered by the government in support of non-disclosure); *Rawlinson,* 487 F.2d at 8, n. 9 ("The defendant's counsel filed a set of questions to be asked the informant. While these questions did not reach the trial judge in time for the hearing, their substance was adequately covered in the hearing."). Conducting the hearing outside the presence of counsel for *both* the government and the defense (as well as outside the presence of the defendant) is applauded because it does not favor the prose-

---

3. In *De La Rosa–Contreras,* the court discussed the advantages and disadvantages of various formats in which an *in camera* hearing could be conducted. In particular, it explored the strengths and weaknesses of hearings in which all counsel and defendant are present, counsel are present but the defendant is not, government counsel is present but neither the defendant nor

defense counsel are in attendance; and participation is limited to the district judge, the court reporter, and the witness. After a discussion of the various formats of *in camera* hearings, the court concluded that "[a]n *in camera* hearing attended by only the judge, the court reporter, and the witness" was most appropriate. *Id.* at 392.

cution or defense. This method is also favored because it dispels any concerns the public may have if defense counsel were allowed at the hearing—some members of the public may believe a lawyer would disclose the information obtained at the hearing to his client.

A second approach used by courts is to permit the prosecutor to attend the *in camera* hearing, but preclude the defendant and the defense attorney from participating in it. The defense is merely allowed to submit questions to be posed at the hearing. *United States v. Mendoza–Burciaga,* 981 F.2d 192, 195 (5th Cir.1992), *cert. denied,* 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993) (court questioned government agents and counsel vigorously at the *in camera* hearing; court also tape recorded questions posed by defense counsel and played them at the *in camera* hearing).

A third approach suggested by a few courts is to permit defense counsel, but not the defendant, to participate in and cross-examine witnesses at the *in camera* hearing. *See e.g., United States v. Saa,* 859 F.2d 1067, 1075-75 (2d Cir.1988) (finding that it was error, albeit harmless error, not to disclose identity of informant to one of the defendants so that the informant could be interviewed prior to trial; court suggested that if disclosure of the informant's identity to the defendant would raise legitimate concerns for the informant's safety then court could have allowed defense counsel to question the informant *in camera* because such an approach would satisfy the defendant's "right personally to request an interview with the informant, without jeopardizing the informant's safety"); *United States v. Anderson,* 509 F.2d 724, 729 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975) (sanctioning the *in camera* hearing in that case, which was closed to the defendant and his attorney but suggesting that *in camera* hearings with defense counsel would be acceptable) Defense counsel is (or at least should be) placed under an enforceable order *not* to disclose the evidence that he or she has heard at the

hearing.[4] *Anderson,* 509 F.2d at 730. The advantage to this approach is that it promotes public perceptions of fairness in judicial proceedings and reduces the burden placed upon the judge to act as defense counsel and impartial fact-finder at the same time. The downside of allowing defense counsel to attend and placing him or her under a "gag" order is that it raises some concern regarding the defense attorney's ability to consult with his or her client.

### This Court Will Hold an In Camera Hearing Outside the Presence of the Defendants, Defense Counsel and the United States Attorney

■ In this court's opinion, the most suitable way in which to hold the *in camera* hearing is outside the presence of the government's attorney, the defendant and the defense attorney. In reaching this conclusion, this court is persuaded by the case of *United States v. De La Rosa–Contreras,* 859 F.Supp. 388, 392 (D.Ariz.1994), in which the court found that it was "most appropriate" to proceed in this fashion. Thus, an *in camera* hearing (should the need arise) in which *both* the government agents and informants who participated in the controlled buys are questioned by this court will be held outside the presence of the attorneys for the government and the defense. Prior to the hearing, the government and the defense will be allowed to submit a set of interrogatories to be asked at the hearing. Moreover, the government will be ordered to submit evidence in support of non-disclosure.

This court recognizes, as did the court in *De La Rosa–Contreras,* that one major drawback to proceeding outside the presence of counsel is that "the court [must] assume the role of examiner although potentially unaware of key evidence or information." *United States v. De La Rosa–Contreras,* 859 F.Supp. 388, 392 (D.Ariz.1994). In order to alleviate this inherent shortcoming, this court will order the government to produce the evidence it intends on offering at trial (e.g. physical evidence, testimonial evidence, etc.)

---

**4.** But do note, that by placing defense counsel under a protective / "gag" order, it raises some concern involving the defense attorney's ability to consult with his or her client about potential cross-examination.

regarding the controlled buys, in addition to reports, relevant grand jury testimony and other evidence concerning these transactions. Upon receipt and review of such information, this court will have a keener understanding of the facts underlying the controlled purchases and will be better able to formulate questions to be asked at the hearing.

After the hearing, this court will issue its finding, on the record, as to whether disclosure is warranted. Specifically, this court will make a finding as to whether the testimony of the informants is "material." In assessing the materiality of the informants' testimony, this court will take into consideration the three factors identified in *United States v. Singh,* 922 F.2d 1169, 1172 (5th Cir.), *cert. denied,* 502 U.S. 893, 112 S.Ct. 260, 116 L.Ed.2d 214 (1991):(1) the informants' level of involvement in the controlled buys (or the investigation), (2) the helpfulness of the disclosure (e.g., significance of the informer's testimony) and (3) the government's interest in non-disclosure (e.g., continuing use and concern for safety of informant). This court will also keep in mind the crime charged, the possible defenses and other relevant factors. *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628.

### ORDER

**IT IS HEREBY ORDERED** that an *in camera* hearing of the type specified in this opinion and order is to be held if, during the trial, the government reveals its intent on introducing evidence of transactions involving informants without calling the informants as witnesses.