**Barbara SMITH and Joseph Smith, Plaintiffs,**

v.

**CITY OF DETROIT, et al., Defendants.**

No. 01–70740.

United States District Court, E.D. Michigan, Southern Division.

Jan. 7, 2003.

Ronnie E. Cromer, Jr., Detroit, MI, for plaintiff.

Barrie L. Merkerson, City of Detroit Law Department, Detroit, MI, for defendants.

### *MEMORANDUM OPINION AND ORDER*

ANNA DIGGS TAYLOR, Chief Judge.

#### I.

The Plaintiffs, Joseph Smith and Barbara Smith (the "Smiths"), are an elderly husband and wife. The Smiths reside in a single family home in a residential neighborhood on Detroit's east side. This action arose because of a drug raid executed on their home by Detroit Police Officers (the "Defendants"). The incursion was based on a search warrant predicated, at least in part, on information which the affiant swore he had obtained from a confidential informant known as SOI # 403 (the "CI"). The Smiths are alleging assault and battery, deprivation of civil rights under 42 U.S.C. § 1983, and false arrest and imprisonment in the lawsuit they have filed.

In connection with their claims, the Smiths moved to depose the CI in an in-camera hearing. On December 12, 2001, Magistrate Judge Thomas A. Carlson ordered that:

> "Plaintiffs ... may not inquire into the history of the informant or departmental regulations relating to informants; Provided, however, Defendants shall produce the informant, for an in-camera deposition, with only counsel present, before the undersigned, without disclosing his identity, for an examination limited solely to what house he went into for the subject drug buy and what he told the officers about that location."

After conducting a search for him, the Defendants located the CI, and he was produced in court on May 24, 2002. However, prior to the commencement of the in-camera deposition the parties reached a proposed settlement agreement, and the CI was not deposed. In July, 2002, the settlement agreement failed.

On September 6, 2002, the Smiths filed a Motion to Compel Production of Confidential Informant For Purposes of Previously Ordered In–Camera Hearing. On October 1, 2002, Magistrate Judge Carlson Ordered that:

> "[T]he Plaintiffs' Motion to Compel be granted in part; that Defendant City shall produce the Confidential Informant ('CI') for an in-camera deposition by October 21, 2002, or shall, by that date, provide the full name, social security number, previous and last known addresses, and locations of recent hospitalizations, of the informant to allow Plaintiffs the opportunity to locate and depose him in-camera."

On October 10, 2002, the Defendants filed this Motion before the District Judge to whom the case is assigned to Reconsider Magistrate Judge Carlson's Order of October 1, 2002 (the "Order").

#### II.

This Motion is governed by Fed.R.Civ.P. 72(a)[1] and Local Rule 72.1(a). Under the former, "the district judge to whom the case is assigned shall consider ... objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). The Defendants now maintain that the Magistrate Judge committed clear error when he issued the October 1, 2002, Order.

#### III.

The Informant's privilege is well recognized. *See Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege is applicable in both civil and criminal proceedings. *Holman v. Cayce,* 873 F.2d 944, 946 (6th Cir.1989);[2]

---

1. "A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which an objection was timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).

2. The court in *Holman* discussed the relevant distinctions between the civil and criminal con-

*Bergman v. United States,* 565 F.Supp. 1353, 1360 (W.D.Mich.1983); 8 Wright, Miller & Marcus, § 2019. In *Roviaro,* a criminal defendant was convicted of selling heroin to a confidential informant. The confidential informant was the only witness to the crime, and a material participant in it. The defendant wanted the informant to testify at trial as part of his defense. The government asserted a privilege to keep the identity of the informant secret. The Court stated:

> [w]hat is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of person who furnish information of violations of the law to officers charged with enforcement of that law. The purpose of that privilege is the furtherance and protection of the public interest in effective law enforcement ... [a] ... limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity ... is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege must give way. *Id.* at 59–61, 77 S.Ct. 623.

■ Accordingly, a defendant is not required to disclose the identity of a confidential informant unless it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 53, 77 S.Ct. 623. The determination of whether a confidential informant's identity is "essential" is a question of law for the trial judge, and must be determined by balancing the need of the plaintiff for the information with the defendant's interest in non-disclosure. *Id.* at 62, 77 S.Ct. 623. Under *Roviaro,* the Smiths must show a need for this information.[3]

## IV.

The first mandate of the Order was that:

> "Defendant City shall produce the Confidential Informant ('CI') for an in-camera deposition by October 21, 2002..."

The second *alternative* mandate of the Order was that:

> "[The Defendant City] shall, by [October 21, 2002], provide the full name, social security number, previous and last known addresses, and locations of recent hospitalizations, of the informant to allow Plaintiffs the opportunity to locate and depose him in-camera."

For the reasons that follow, the Defendants' motion to reconsider the first mandate is denied; the motion to reconsider the second mandate is granted, and that order is reversed.

## V.

In cases where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause, the Government has been required to disclose the identity of the informant unless there was sufficient evidence to uphold the warrant apart from the confidential communication. *See Roviaro* at 60–61, 77 S.Ct. 623. In the present case, a determination that the CI did not exist would

---

texts at some length concluding that "this distinction should be treated only as one of the factors utilized in a *Roviaro* balancing; it does not, by itself, warrant ... [asserting that] a higher standard of justification must be satisfied in civil cases in order for an exception to the privilege to be recognized, since it cannot be said that all civil cases are less significant than all criminal cases." 873 F.2d 944, 946–47.

**3.** The Defendants here assert that five issues govern the "essential for a fair determination" inquiry. First, this is not a criminal prosecution in which the Plaintiffs are at jeopardy of conviction and imprisonment. Second, the CI is not under the Defendants' control, and, therefore, the failure to produce him does not give rise to a presumption that his testimony would be unfavorable to them. Third, the CI's testimony could not shed any light on the events surrounding the Plaintiffs' allegations based on the execution of the Search Warrant. Fourth, the sufficiency of the Search Warrant depends on the officer's ability to show that his affidavit relied on more than mere suspicion or that his conclusions are based upon his belief that the information is credible and reliable. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Finally, the safety of the CI must be considered—service as a confidential informant has resulted in numerous attempts on the CI's life and that of his family members. *See* [Defendant's Brief, pp. 10–11]. The Court does need to rule on whether the CI is "essential for a fair determination" for the purposes of this Motion.

**510**

have significant ramifications for plaintiffs' case. The Smiths claim that (1) the search warrant was executed on the wrong house, and (2) the search warrant was obtained through the subterfuge of falsely claiming that the CI existed, on the part of a Defendant Police Officer (part of the claimed impropriety is the alleged post-hoc manufacturing of the role of the CI). The existence and credibility of the CI goes directly to the issue of the integrity of the efforts used to obtain the search warrant.[4]

■ Upon assertion by the Government, the informer's privilege is subject to close scrutiny. A court should be mindful of "the public interest in protecting the flow of information," *Roviaro, supra,* 353 U.S. at 62, 77 S.Ct. 623, but also be "aware of the need to maintain the integrity of and confidence in the criminal justice system." *Bergman* at 1364. Therefore, *"the assertion of the informer's privilege by a law enforcement official defending against a civil suit for damages based on his own alleged official misconduct should be scrutinized closely." Id.* (emphasis in original).

■ If under the weight of the necessary level of scrutiny the Government cannot prove that the CI is living, then the privilege crumbles. It is clear that the "death of the informant effectively extinguishes the very limited informant privilege." *Bergman v. U.S.,* 844 F.2d 353, 363 (6th Cir.1988). Therefore, as a condition precedent for invoking the informer's privilege, the government must produce evidence of the live informant. *Id.* Here, the Defendants have stated that, after extensive efforts, they are unable to locate the CI.[5] If this be the case, then the Defendants cannot invoke the informer's privilege.

With the privilege dissolved, the Government must produce its formerly privileged information. If the Defendants can prove the CI is alive, then necessarily it follows that the Defendants know the CI's location. Likewise, if the Defendants cannot locate the CI, then they cannot prove that the CI is alive. Therefore, to allow the Defendants to claim the privilege and to simultaneously state that they cannot find the CI would fly in the face of simple logic. The rubric of justice provided by *Bergman* simply does not allow the government to claim a policy so pregnant with mischief. If it were otherwise, the government could selectively produce informants—that is selectively produce information, and "selective information is misinformation." *See Detroit Free Press v. Ashcroft,* 303 F.3d 681, 683 (6th Cir.2002) (discussing the dangers created by situations where the government selectively controls information rightfully belonging to the people.).[6]

Any form of non-compliance with the Order is unacceptable; however, the nature of the refusal should delimit the proper response of the Court. Willful non-compliance with the first mandate of the Order will be looked upon with extreme disfavor.[7] If the Defendants *will* not comply with the first mandate of the Order, then they are subject

---

4. In *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), a civil rights action for monetary damages brought against federal and state law enforcement officers, a critical question concerned the government's claim of privilege for an informant, whose representations led to the issuance of a search warrant for the apartment. In remanding the case to the district court for a new trial, the Seventh Circuit Court of Appeals determined that a just adjudication of plaintiffs' claims required that the informant's identity be disclosed, subject to a restrictive protective order. *Id.*

5. There may be a strong likelihood that the CI is dead. The last time the Defendants found him he was "in a hospital, because he suffers some kind of kidney [ailment] other than his other problems of being HIV positive and all of the other things—being shot seven or eight times." *See* [Transcript of Hearing before Magistrate Judge Carlson, October 1, 2002, pg. 10].

6. "The Framers of the First Amendment 'did not trust any government to separate the true from the false forums.'. They protected the people against secret government." *Detroit Free Press* (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 773, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)) (quoting *Thomas v. Collins,* 323 U.S. 516, 545, 65 S.Ct. 315, 89 L.Ed. 430 (Jackson, J., concurring)).

7. In the instant case, there is no express contention that the Defendant's are in willful non-compliance.

to sanctions under Fed.R.Civ.P. 37(b).[8] In *Bergman,* the court had considered the privilege, and had ordered production subject to a protective order. The government refused to comply with the order, after which the court entered an order barring the government from presenting portions of its defense and allowing the plaintiff to submit proposed findings based upon the undisclosed information. *See Bergman;* 156 A.L.R. Fed. 601, 1999 WL 639517.

■ Impotent non-compliance with the first mandate of the Order should be dealt with in a different manner. If the Defendants *cannot* comply with the first mandate of the Order, then they must be precluded from presenting any evidence at trial based on, or flowing from, the alleged existence of the CI. With impotent non-compliance, even though there is no explicit refusal to comply with the first mandate of the order, the potentially prejudicial effect on a plaintiff's case is the same. Beyond barring the defendants from presenting any portion of their case logically dependent on the existence of the CI, the case for the imposition of sanctions under Fed.R.Civ.P. 37(b) would not be nearly as strong as it is for willful non-compliance.

If the Government can somehow prove that the CI is alive without being able to produce the CI, then the second mandate of the Order should be reversed and remanded for procedures consistent with the standards outlined in *United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir.1985). There, the court noted that "the great weight of authority in this circuit and from other circuits indicates that a preliminary in-camera interview of the informant is the appropriate procedure before ordering disclosure [of the informants identity]." *Id.*

The more direct question presented by the second mandate of the Order is whether a court can order disclosure of the identity of the informer where the informer is unavailable for the in-camera hearing.[9] In the present case, the CI is alleged to be in danger because of his/her status. According to the Defendants, "[t]he [CI] has been shot [many] times. He has had killings in his family ... a lot of people want this man or woman [dead]."[10]

■ Under circumstances where the safety of the informant is in question and the party seeking disclosure claims that disclosure is material to their case, courts have order an in-camera hearing to determine if the identity of the informant had to be disclosed. *See United States v. Lloyd,* 400 F.2d 414, 415 (6th Cir.1968); *United States v. Savage,* 969 F.Supp. 450, 453 (E.D.Mich. 1997). Therefore, in addition to ordering a in-camera hearing to interview the informant, the court may order an in-camera hearing to determine whether the informant's identity must be disclosed. Courts are afforded wide latitude in conducting an in-camera hearing of this type, and in fact, courts conduct such hearings in a variety of ways.[11]

■ In the present case, there appears to have been an in-court hearing on the issue of compelling the production of the informant for an in-camera hearing, and on the issue of disclosure. It does not appear that there was an in-camera hearing conducted for the purpose of determining whether the producing the CI was "essential to a fair determination," which in turn determines whether or not disclosure is appropriate. The "overarching purpose of such a hearing is to determine if the informant's testimony is material to the defense—only if the testimony is mate-

8. In *Bergman, supra,* the court rejected the government's argument that it could not be sanctioned because there was no evidence it acted in bad faith. The court overcame this argument by pointing out that bad faith is not a requirement for imposing sanctions under Rule 37(b). *See* 156 A.L.R. Fed. 601, 1999 WL 639517.

9. The Order also calls for disclosure of the last known location of the CI. However, "for the informer's safety, disclosure of the informer's

location has been denied although the informer's name is known." *Sharp* at 1186; *United States v. Tenorio–Angel,* 756 F.2d 1505, 1510 (11th Cir. 1985).

10. *See* [Transcript of Hearing before Magistrate Judge Carlson, October 1, 2002, pg. 18].

11. *See Savage* at 453 (outlining three possible approaches).

rial, must his or her identity be disclosed." *Savage*, at 453. Courts look at three factors in assessing the materiality of an informant's testimony: (1) the level of the informant's involvement; (2) the helpfulness of the disclosure; and (3) the government's interest in non-disclosure. *Savage* at 453. Accordingly, the second mandate should be reversed and remanded for procedures consistent with those outlined above.[12]

Finally, the Smiths argue that: (1) the Defendants are attempting to circumvent Fed.R.Civ.P. 72(a)'s clear language regarding the timeliness of objections to a Magistrate's order; and (2) the issue, as framed by Defendants, was never advanced by the Plaintiffs at the October 1, 2002, Hearing. Both of these arguments are without merit.[13]

For the foregoing reasons,

IT IS ORDERED that the October 1, 2002, Order is reversed and remanded for procedures consistent with this Opinion.

IT IS SO ORDERED.

---

**12.** On the issue of materiality of the CI, the Smiths allege that the search warrant was both wrongfully obtained, and wrongfully executed. The Defendants claim that the CI was sent into the Smith residence where the CI claims to have made a controlled purchase. There is a further issue as to whether the Constitutional violation alleged is: (1) the search of the wrong house, (2) the failure to follow the warrant's directives, and/or (3) that the warrant was wrongfully obtained through the alleged use of the CI. For the purposes of this motion to reconsider only, the Court assumes that the CI is material to the resolution of these issues. However, the "essential for a fair determination" inquiry will be conducted by the Magistrate Judge on remand. Although it is not clear from the record, it should be noted that, in answer to a discussion sur-

rounding the question of whether there will be production of the CI, Magistrate Judge Carlson stated: "I'm not going to revisit that [issue] again. Really, what we are here for today is can you—can you produce this guy or can't you..." *See* [Transcript of Motion Hearing before Magistrate Judge Carlson—October 1, 2002, pp. 10–11]. This may imply that a determination of whether the disclosure was "essential" had already been made. If this is the case, it is still not clear that the proper mechanism—an in-camera hearing—was employed.

**13.** The Defendants' Motion to Reconsider was filed within the 10 day time frame called for under Fed.R.Civ.P. 72(a).